## KLINK *vs.* BOLAND.

[Blandford, Justice, being disqualified, Judge Hammond, of the Atlanta circuit, was designated to preside in his stead.]

1 Requests to charge, which would entirely exclude from the consideration of the jury the theory of the case on which the adverse party relies, should not be given.

2. Although a request to charge may contain a correct abstract principle of law, yet if it be so general as not to be of practical value, or to aid the jury in arriving at the truth under the evidence, its refusal will not be error.

3. A request to charge, which assumed that the mere voluntary delivery by a wife to her husband of a bond for titles, which had been executed and delivered to her, would carry with it a full grant of power to do with it as he pleased, was properly refused.

(a.) Where a conveyance has been made by a married woman, which is void by reason of being made to secure a debt of her husband, she cannot render it valid as to the creditor after it has been made; nor would the fact that she authorized the creditor to convey the property to a third party estop her from asserting her legal and equitable rights against such creditor.

4. Where one sought to sell property to a husband and take property belonging to the wife as security for the debt, but finding that this could not be done so as to bind her, a bill of sale to the property was made directly to her, and a conveyance with bond to reconvey was given by her to him to secure the debt, if the husband concealed from his wife the true nature of the transaction, and caused her to believe that he was the purchaser and she only security, a mere want of knowledge on the part of the vendor that there had been such a concealment would not be sufficient to relieve him, but there must also be an absence of reasonable grounds of suspicion.

(a.) The charge of the court to the effect that, if the wife signed the deed, believing that she was doing so only as security, and if she had been so informed and the bill of sale concealed from her, then she was not bound, must reasonably and fairly have been taken by the jury to mean that, if the concealment and information had been by the husband and creditor together, or by the husband and known to the creditor, then she would not be bound.

(b.) The circumstances of this case, showing a collusion on the part of the husband and creditor to induce the wife to make the conveyance contrary to law, were so strong as to leave no reasonable doubt that the creditor knew all about the transaction, or ought to have known, or taken more pains to inquire; and the evidence required the verdict.

HAMMOND, J., *dubitante* as to 4, (a) and (b).

April 8, 1884.

Charge of Court. Husband and Wife. Principal and Surety. Debtor and Creditor. Before Judge WILLIS. Muscogee Superior Court. November Term, 1882.

Reported in the decision.

PEABODY & BRANNON; LITTLE & WILLIS, for plaintiff in error.

J. M. McNeill; L. F. Garrard; Thornton & Grimes, for defendant.

Hammond, Judge.

Mrs. Grace Boland, who was a married woman, conveyed certain real estate to C. A. Klink. She alleges that it was done to secure the debt of her husband. The facts connected with the transaction, as alleged by her, are these: Her husband, having purchased from Klink a barroom known as the "Sans Souci," for the price of $1,200.00, was unable to pay for the same, and, Klink demanding security, he induced her to convey her lot to Klink for that purpose. Klink gave her a bond to reconvey upon the repayment of the $1,200.00 with interest. Klink took possession of her house and lot at once, and used it and enjoyed the rents until September 23, 1875, when, without her knowledge, he conveyed it to one Ryan for $1,200.00. Ryan, on the same day and without her knowledge, conveyed it to one Wynne for $2,018.75, and Wynne has ever since been in possession. She brought an action of ejectment against Wynne for the house and lot, but failed to recover, because Wynne, on the trial, showed himself to be a *bona fide* purchaser. She prays that Klink be held as trustee in respect to that property and the proceeds and value thereof, and that he be decreed to account to her for the same. Discovery was waived.

The allegations in the defendant's answer, which are material to the questions made here, are substantially as follows: Complainant's husband did propose to buy the bar, and to get his wife to give a mortgage on her property to secure the purchase money. Defendant was advised that this could not be done, and refused to make the sale to him. Complainant herself then proposed to become the purchaser, and the sale was made to her for $1,200.00, she making an absolute deed to him to her said house and lot to secure the payment of that amount; and as part of

the same transaction, he gave his bond to her to reconvey on payment of that amount. After the purchase, complainant took possession of the bar, by her husband as agent, and managed and controlled it until April, 1875, and then sold it for $1,000.00. On the 23d of September, 1875, she surrendered her bond to defendant, and directed him to convey the house and lot to Ryan, upon payment of the balance of the purchase money, which was done.

The documentary evidence introduced showed that the title to the property in dispute was in complainant, as her separate property, and that she conveyed it to Klink, the defendant, and that Klink gave her a bond to reconvey upon payment of $1,200.00 with interest, and that Klink gave to her a bill of sale to the " Sans Souci" bar. There were several receipts given by Klink to Mrs. Boland for part payments made on account of the purchase of the bar, and there was a power of attorney from complainant to Klink, authorizing him to sell the bar fixtures in the "Sans Souci " belonging to her, and pay certain notes and pay the balance to her, and also a power of attorney from her to her husband, authorizing him to receipt for any money due her, and some receipts given by him as her agent for money, etc.

The facts, as shown by the witnesses to the main transaction, are about these: Complainant's husband wanted to buy, and the defendant, Klink, wanted to sell, the "Sans Souci" bar-room. They agreed upon a trade, by which complainant's husband was to pay $1,200.00, for which time was to be given. The payment of this money was to be secured by a mortgage on complainant's house and lot, and legal advice was sought for the purpose of consummating the transaction. It was then ascertained that complainant could not legally mortgage or convey her separate property to secure her husband's debt, and an effort was made to substitute her for nim, so that the desired security could be lawfully given, the husband undertaking to obtain her consent to the transaction. The pa

pers were drawn accordingly, and the parties all repaired to her house, where she was sick in bed, for the purpose of obtaining her signature to the deed and consummating the transaction. They were there but a short while, and there is some discrepancy between the witnesses as to precisely what occurred during that time. She and her husband both swore that she had not been apprised of the true nature of the transaction, and that it was not revealed to her at that time. The deed was read to her, and she signed it, and the bond for titles was then delivered to her by Klink, the defendant. Klink testified that the bill of sale was handed her at the time, and Brannon also testified to the same fact. She and her husband both denied this. After the sale, the husband took charge of the bar and ran it, and managed it entirely in his own name; and he testifies that this was well known to Klink, the defendant. Afterwards the husband took the bond that had been given to his wife, and delivered it to Ryan, requesting Klink, the defendant, to make a deed to Ryan, which was done, and his bond taken up. Complainant and her husband both testify that she didn't know about the transaction, and that he did it entirely of his own motion, and without apprising her of his intention.

The issues were submitted to the jury by the presiding judge in the form of questions, which they were required to answer, and which were as follows:

1st. "Did Andrew Boland buy the 'Sans Souci' bar, and did Mrs. Boland make this deed to her house and lot as security for the purchase?

2d. "If Andrew Boland bought the 'Sans Souci' bar, and Mrs. Boland made a deed to her house and lot to secure his debt, then what was the value of the house and lot at the time the deed was made, with interest thereon from the time it was conveyed to this date?

3d. "Did Mrs. Boland purchase the 'Sans Souci' bar, and make the deed to her house and lot to secure the payment of her debt for the same?

4th. "If Mrs Boland bought the 'Sans Souci' bar of Klink, and made him a deed to her house and lot to secure the payment of her debt to him, then did Klink sell her house and lot to Ryan without her consent or with her consent?

5th. "If Mrs. Boland bought the 'Sans Souci' bar of Klink, and deeded her house and lot to secure the payment of her debt for the same, then how much did she owe Klink for the purchase money for the same at the time he conveyed the property to Ryan?

6th. "What was the value of the house and lot at the time Klink conveyed to Ryan?

7th. "Did Klink account to Mrs. Boland for the value of her house and lot, after deducting the amount of her indebtedness to him (if she was indebted to him)? If not, what amount of the value of the property was unaccounted for, with interest on the same to this date?"

The judge instructed the jury that, if they answered the first three of these questions in favor of Mrs. Boland, the complainant, they need not answer the others at all.

The verdict of the jury was in her favor, the finding being that the purchase of the " Sans Souci " was made by Andrew Boland, her husband, and not by her. The verdict also fixed the value of the property and the interest, and a decree was entered against the defendant in accordance therewith.

A motion was made for a new trial by the defendant, which was overruled, and that is the judgment excepted to. There were eighteen grounds in the motion, but only seven of them were insisted on in this court. They are as follows:

(1.) Because the court having, at the request of said defendant, given in charge to the jury the following, to-wit: "If you believe that the bill of sale to the 'Sans Souci,' the deed from Mrs. Boland to Klink, and the bond for titles from Klink to Mrs. Boland were all made and delivered as parts of one transaction, then the effect of such instrument is to vest the title to the 'Sans Souci' in Mrs. Boland, to make the debt for the purchase money her debt, and the deed made to secure this debt is valid and binding on her;" the court then went on to charge the jury as follows: "But if you believe from the evidence that Mrs. Boland had been informed that she was conveying her property as security for her husband, and the bill of sale to her was concealed from her, and she signed the deed

conveying her property, believing that she was doing so as security only for her husband's debt, then she would not be bound."

(2.) Because the court refused to give in charge to the jury, as requested by the defendant, in writing, the following : "Whether a given state of facts constitutes a debt, and if so, who is the debtor, are both questions of law."

(3.) Because the court refused to give in charge to the jury, as requested by the defendant, in writing, the following : "If the title to the 'Sans Souci' bar-room was made to Mrs. Boland, and she gave the deed as security for the purchase money, then she, and not her husband, is the real debtor."

(4.) Because the court refused to give in charge to the jury, as requested by the defendant, in writing, the following: "If the title to the ' San; Souci' bar-room was not made to A. J. Boland, and if he gave no note or other promise to pay the purchase money, then he was not the debtor of Klink for the purchase money."

(5.) Because the court refused to give in charge to the jury, as requested by the defendant, in writing, the following: "Even if Boland did not explain the transaction to his wife, so as to enable her to fully comprehend it, still Klink would not be affected by such conduct of the husband, unless he knew of it before the deed was made to him."

(6.) Because the court refused to give in charge to the jury, as requested by the defendant, in writing, the following : "Even if the jury believe that Mrs. Boland did not understand that she was the purchaser, but believed that her husband was the purchaser and she was only his security, yet if this fact was not known to Klink, and if he made the transaction, believing that she did understand that she was the purchaser, she is bound by the deed."

(7.) Because the court refused to give in charge to the jury, as requested by defendant, in writing, the following: "If the jury believe that Mrs. Boland delivered to A. J.

Boland the bond for titles, and did so voluntarily, and Boland delivered it to Klink, and at the same time requested him to convey the property to Ryan upon payment of the amount due to Klink, and Klink did receive the bond and make the conveyance as requested, and only received the amount due him from Mrs. Boland, and that Ryan received this deed with a full knowledge of the facts, then Mrs. Boland cannot hold Klink liable for such conveyance by him."

We will take up these grounds and dispose of them, not in the order named, but in the order of their importance, beginning with the minor ones first.

1. The requests made in the third and fourth grounds were objectionable, because the effect of them, if given in charge, would have been to exclude from the jury entirely, the consideration of the question as to whether or not the whole transaction was an effort to evade the law, and to accomplish an illegal act by a subterfuge. This was the theory of the complainant's case, and the court did right in refusing to exclude it from the jury by giving these requests.

2. The request contained in the second ground was properly refused, because, while correct in itself as an abstract principle of law, it could not have aided the jury in arriving at the truth, under the evidence, being too general to be of practical value for that purpose. It is much better for the court to tell the jury the precise law applicable to the facts of the case, in plain terms, that are comprehensible to men of ordinary business qualifications, than to deal in abstract legal principles that can only be readily apprehended by men of technical skill and learning.

3. The request contained in the seventh ground was properly refused for two reasons. First: It would make Mrs. Boland responsible for the unauthorized act of her husband. It assumes that the mere voluntary delivery by her to him of a bond for titles that had been executed

and delivered to her would carry with it a full grant of power and authority to do with it as he pleased; whereas, in point of fact and truth, no such presumption would naturally arise from such conduct on her part. The evidence, on the contrary, was that she gave him no authority whatever to do as he did, and did not know or suspect his intentions. The second ground of objection to the request is a radical one. Where a conveyance is made by a married woman, which is void by reason of being in violation of the special provisions of the law on that subject, it cannot be vitalized by any subsequent conduct on her part. She is as much disabled from rendering it valid after she makes it, as she is from making it in the first instance. Otherwise, the law might be evaded, and its wholesome provisions rendered utterly nugatory, simply by obtaining the wife's consent to the making of a second conveyance by her vendee. It follows from this that, even if Mrs. Boland knew of, and expressly authorized, the conveyance from Klink, the defendant, to Ryan, she would not thereby be estopped from asserting her legal and equitable rights against Klink. The policy of the law is far reaching, the object being to afford complete protection, which could not be done, if she were allowed afterwards to vitalize the illegal act.

4. The last alleged error is that complained of in the first, fifth and sixth grounds of the motion. These three grounds of complaint are substantially the same, and will be considered together. The court refused to charge that Klink would not be bound by the conduct of the husband, if he failed to explain the transaction to his wife, and she did not understand that she was the purchaser, if he made the transaction, believing that she did understand, and unless he knew of the concealment from the wife before the deed was made, and did charge that if the bill of sale was concealed from her, and if she had been informed that she was conveying her property as security for her husband, then she would not be bound. The majority of the court

are of the opinion that, while this presentation of the law was not strictly accurate, still it was not sufficiently erroneous to necessitate the grant of a new trial. They hold that the requests in the fifth and sixth grounds were properly refused, because a mere want of knowledge on the part of Klink that there had been a concealment, by the husband from the wife, of the true nature of the transaction, would not be sufficient to relieve him, but there must also be an absence of reasonable grounds of suspicion; and they hold that the language of the court in the first ground, to the effect that if Mrs. Boland signed the deed, believing that she was doing so only as security, and if she had been so informed, and the bill of sale concealed from her, then she was not bound, must reasonably and fairly have been taken by the jury to mean that, if the concealment and information had been by the husband and Klink both, or by the husband, and known to Klink, then she would not be bound. They hold, moreover, that, however this may be, even if an error was committed by the court, the circumstances showing a collusion on the part of the husband and Klink to induce the wife to make the conveyance contrary to law were so strong as to leave no grounds of reasonable doubt that Klink knew all about it, or at least, that he ought to have known, or taken more pains to inquire, and that the evidence required the verdict, and, therefore, the verdict ought not to be set aside.

With great hesitation and diffidence, I feel bound to say that I cannot yield my entire assent to this view of the case. I have grave doubts as to whether the charge of the court, as delivered, and the refusals to charge as requested, did not deprive the defendant of an important right in the case, by cutting off the jury from all inquiry into the question as to whether or not Klink had any knowledge or notice of grounds of reasonable suspicion that the husband had practiced fraud or concealment on

the wife. See *Hull vs. Sullivan*, 63 *Ga.*, 126. With the bare suggestion of this doubt, however, I am content to concur in the decision of the majority of the court.

Judgment affirmed.