SCHOFIELD *v.* JONES.

1. Parol evidence is admissible to show whether the debt covered by joint promissory notes of husband and wife was in fact the joint debt of both, or whether it was the several debt of the husband,

and the wife was only his surety upon the notes. And if the inquiry involves an explanation of another writing, such as a deed of lease executed to the husband and wife jointly, parol evidence is admissible to show the wife's true relation to that instrument also.

2. Husband and wife may become joint lessees of a house in which to carry on the hotel business, contract jointly to pay the rent, and execute joint promissory notes therefor. Where such is not merely the outward color but the real truth of the transaction, the debt for rent is the debt of the wife as well as of the husband, and she may pledge her separate property as security for its payment.

October 3, 1890.

Husband and wife. Evidence. Promissory notes. Contracts. Before Judge HARRIS. City court of Macon. September term, 1889.

Reported in the decision.

LANIER & ANDERSON, for plaintiff in error.

H. V. WASHINGTON and TURNER & WILLINGHAM, contra.

BLECKLEY, Chief Justice.

The action was complaint in the nature of trover for the conversion of a diamond ring. It was brought by Mrs. Jones against Schofield in May, 1889. The jury found for the plaintiff $191.68; and the defendant made a motion for a new trial, which was overruled by the court.

The plaintiff delivered the ring to the defendant, in August, 1888, as security for a debt, and the debt was unpaid when the action was brought. If the debt was one for which Mrs. Jones was bound jointly with her husband, there should have been no recovery; if otherwise, the verdict was correct. The amount of the debt was the same as that found by the jury to be the value of the ring, to wit, $191.68, and was the sum due when the ring was pledged, upon several joint promissory notes made by Mrs. Jones and her husband, for the rent of a building leased in 1886 from Schofield to be used as a hotel, and which was so used, Mrs. Jones owning

v 85-52

the furniture and occupying the premises with her husband, but the business being conducted in his name as proprietor.   The lease was in writing, and was executed under seal by both Mrs. Jones and her husband, they purporting to be joint lessees, and stipulating therein jointly to pay the rent and perform certain other covenants.   Schofield also signed and sealed the instrument as lessor.   The term of the lease was from June, 1886, to October, 1891, five years and four months; but the rent falling into arrears, it actually ran only till August, 1888, and was then superseded by a new lease of like kind executed by the same parties, and running for three years.   Mrs. Jones and her husband again purported to be joint lessees, and they covenanted jointly to pay the future rents and to perform other stipulations.   The instrument also contained a clause in these words :

"And the said lessees further covenant and agree with said lessor to deposit with him a certain cluster diamond ring, of the value of $300.00, which said Eliza Jones, one of the lessees, hereby declares is the individual property of herself, as collateral security for all claims due said lessor for rents past due for said property herein described, to wit, the sum of $191.68, to be held by said lessor until the entire amount is paid in full, principal, interest, cost and expenses, if it becomes necessary to realize on said collateral; hereby authorizing said lessor to sell said ring, either at public or private sale, at any time after January 1st, 1889."

There was parol evidence at the trial, *pro* and *con*, as to whether by either of the contracts of lease actually made and on which the writings were founded, Mrs. Jones was one of the lessees, or whether her husband was the sole lessee.   She contended that she was not a party to the actual leasing, had no interest in the lease, took no estate by it in the premises, and was only surety for her husband for the payment of rent; and that her contract of suretyship being void, her pledge of the ring as further security was void likewise.

1. One of the questions made by the motion for a new trial is, whether parol evidence was admissible to vary or contradict the written contracts of lease and the promissory notes covering the stipulated rents. It is not deemed in our law any contradiction of promissory notes to inquire by parol evidence into their consideration, or the true relation of the makers thereof to each other. Without entering freely into such inquiries, the statute rendering void all contracts of suretyship by married women could easily be evaded, and would generally prove nugatory. And we doubt not that where, in order to run down and trace out the relation of a married woman to the consideration of any written contract made by her, it is necessary to extend the inquiry into the origin and object of other writings, they also may be investigated by means of parol evidence, though that evidence might tend to contradict their letter and vary their legal effect.. How else could married women be hindered from doing by the execution of writings what the law disables them to do at all? No amount of writing and no form into which it can be moulded, whether of lease, promissory note or anything else, will bind a woman to pay her husband's debt. No device or subterfuge in which the creditor engages or participates, however numerous or solemn may be the writings used to cover and conceal it, will serve to circumvent the law, provided detection and exposure are within the resources of the law by the use of any evidence, written or oral, direct or circumstantial. All that is necessary is, that there should be enough to produce conviction. But where the creditor, at the time of creating the debt, really intends, in good faith, to extend the credit to the woman and not the man, and the consideration, as the writings are constructed, passes legally and morally to her, and she executes writings adapted to the nature of the transaction

which purport to bind her for the debt as her own, then, whatever may be the private understanding between her and her husband, unknown to the creditor and of which he has no reasonable grounds for suspicion, as to how or by whom the consideration is to be enjoyed, the writings are to be treated as embracing the true substance of the actual contract on both sides. Nor does it matter, in such case, that the creditor's negotiations are all with the husband. The latter is competent to represent the wife as her agent, and this agency, like any other, if not actully created beforehand, may be manifested by ratification. If the wife executes papers which by their nature import a ratification of the previous negotiations, and the acceptance of the terms and stipulations incorporated in the writings themselves, she is no less bound than if she had negotiated in person. If, however, all three, the creditor, the wife and the husband, combine to give mere color by writing to dealings really intended by all of them to be between the creditor and the husband, and the credit is not really extended to the wife, but to him, then she will be at liberty to repudiate her apparent debt, for the reason that it is, at bottom, not her own, but his. The distinction here attempted to be drawn is illustrated, more or less, by cases heretofore decided by this court. *Hull* v. *Sullivan*, 63 *Ga.* 126; *Boland* v. *Klink, Id.* 447; *Klink* v. *Boland*, 72 *Ga.* 485; *Love* v. *Lamar*, 78 *Ga.* 323. What has just been said looks alone to instances of dealing in which the whole consideration of the debt which is created goes to the wife alone or to the husband alone. But the precise question now before us is, what is the result when the whole evidence taken together shows that the consideration passes to the husband and wife jointly? Can the husband and wife, where the credit is not given exclusively to either but jointly to both and where they share equally in the consideration, create a joint debt for the price?

2. In this case the court charged the jury, and of course this part of the charge was decisive of the controversy, that "in Georgia a wife cannot bind her separate property to pay either an individual or joint debt of the husband. If in this case you believe from the evidence that Mrs. Jones and her husband entered into a joint lease of the hotel and gave their joint obligation therefor, and that the ring in controversy was Mrs. Jones' separate property and she pledged it to secure the joint obligation, such pledge would not bind her, and she would be entitled to recover the ring notwithstanding said contract." It is plain from this language that the court intended to negative the possibility of creating a debt which, in contemplation of law, would at the same time be the debt of the wife as well as the debt of the husband. But such a possibility has, we think, been virtually recognized by this court in several cases. It was so recognized after judgment upon a joint note in *Mashburn* v. *Gouge*, 61 *Ga.* 512, in *Wingfield* v. *Rhea*, 73 *Ga.* 477, and in *Harrold* v. *Westbrook*, 78 *Ga.* 5. In *Skinner* v. *Allen*, 49 *Ga.* 557, the court said: "The draft which was the matter of contest was drawn by the husband and wife since the act of December, 1866. It did not appear that the wife executed the paper as security for her husband or to pay his debts. In fact it appeared that she was the beneficiary of some of the transactions of which this draft formed a part." A verdict against both was upheld.

In *Amos* v. *Cosby*, 74 *Ga.* 793, land had been set apart as a homestead to the husband as the head of a family consisting of wife and minor children. The husband and wife by a joint deed conveyed it with warranty of title for the consideration of $600. The purchaser sold it with warranty to a second purchaser, and afterwards a lien superior to the homestead was enforced against it, causing a loss to the second purchaser

of over $400. An action against the husband and wife upon their warranty to make good this loss was sustained, although the wife set up her coverture in bar of the same. The court say: "Nor is Mrs. Amos relieved by reason of her being a married woman. She had the right to make the deed with her husband. There having been a homestead set apart to her husband under the act of 1868, she was a usee, and was not the surety of her husband, and is equally bound with him."

In *Beatie* v. *Calhoun*, 73 *Ga.* 269, husband and wife being jointly sued on joint notes made by them, summons of garnishment was issued, which tied up a fund belonging to the wife separately. Both joined in a bond to dissolve the garnishment, and a third person became surety for both on that bond, being induced to do so by a conveyance, made to him for his indemnity, of land which was a part of the wife's separate estate. The plaintiff in the action failed to recover against the wife, but recovered against the husband and the surety on the garnishment bond only. This court held that, as the plaintiff's debt was adjudged not to be joint against the husband and wife, but several against the husband only, the deed made by her of her separate estate to indemnify the surety upon the garnishment bond was invalid, because, as it turned out, it was security for her husband's debt. The court said: "The statute does not permit her to be surety or encumber her estate for her husband's debt in a transaction in which she is sued jointly with him, any more than one in which he is sued alone, unless the debt be her debt. If it be his debt, though she be sued for it with him, her deed to her separate property to secure it is void." In *Runnals* v. *Aycock*, 78 *Ga.* 556, an action on a joint note was defended by the wife, and resulted in a judgment against her which was upheld. *Brent* v. *Mount*,

65 *Ga.* 92, is another instance in which a joint note by husband and wife was recognized as a cause of action against both ; but the case turned on questions of practice.　In *Francis* v. *Dickel*, 68 *Ga.* 255, the suit was on an account against husband and wife as partners, and recovery against the wife alone was had, the jury having found that there was no partnership.　A doubt was suggested in the opinion as to whether there could be a partnership ; but we know of no instance in our own books in which any similar doubt has been mentioned touching the power to create a joint debt.　Looking to other jurisdictions the adjudications are not harmonious. Tibbatts *v.* Tibbatts, 6 McLean, 80 ; Brown *v.* Prevost (S. C.), 5 S. E. Rep. 274 ; Ward *v.* Ins. Co. (Ind.), 9 N. E. Rep. 361 ; Security Co. *v.* Arbuckle, 119 Ind. 69, 21 N. E. Rep. 469 ; Baird *v.* Bruning, 84 Ky. 645 ; Parker *v.* Kane, 4 Allen, 346 ; Reimann *v.* Hamilton, 111 Mass. 245 ; Frecking *v.* Rolland, 53 N. Y. 422 ; Scott *v.* Conway, 58 N. Y. 619 ; Noel *v.* Kinney, 106 N. Y. 74 ; Krouskop *v.* Shontz, 51 Wis. 204 ; Speier *v.* Opfer (Mich.), 40 N. W. Rep. 909 ; Curtis *v.* Crowe (Mich.), 41 *Id.* 876 ; Stewart *v.* Babbs, 120 Ind. 568. Where women occupy the independent position after marriage which our constitution and statutory system secure to them in respect to all property which they have or may acquire, we can see no sound reason upon principle why they may not lease or purchase a hotel jointly with their husbands.　In so doing, where the term of enjoyment is to be five years or more (Code, §§2273, 2279), an estate in realty is acquired, and the relation of tenants in common exists.　Why this relation may not be established between husband and wife is not apparent, especially where the wife is already the owner of a supply of furniture or other personal property, which cannot be used profitably, except in connection with some business to carry on which the services and co-op-

eration of the husband would be required. If the wife had no share in the business and its proceeds, she might require the payment of rent by her husband for her interest in the realty as well as hire for the use of her personalty ; or, if she chose to do so, she might waive any claim for either, for that would be only making a gift to her husband of the use of her property, which, under our law, she is at full liberty to do, provided she does not thereby inflict injury or loss upon her creditors. We perceive, therefore, that there was no obstacle in the way of Mrs. Jones to receive and share with her husband the consideration for which their debt to Schofield was created. And if the consideration could move to them jointly, why could not the obligation to pay for it be joint also, and binding upon her as well as upon him ? The true test of the real debtor or debtors is, to whom did the consideration pass? *King* v. *Thompson,* 59 *Ga.* 380. If it passed to one of them severally, that one alone is the debtor ; but if to both jointly, then consistency requires that they should be held as joint debtors, they having united in executing a joint agreement and assuming a joint obligation to pay. This would involve no element of suretyship on the part of one for the other; no contract of suretyship would exist. The relation between joint debtors is not a relation of principal and surety, and the law does not so denominate it. The wife, in such case, does not undertake to pay the debt of her husband; her undertaking is to pay her own debt, one which she has made her own by sharing in the consideration, and by uniting in a joint contract to pay the whole sum. On the other hand, by the very nature of a joint contract, the debt is also that of her husband ; he too is liable to pay the whole sum, not because he is her surety, but because the whole debt is his as well as hers. The equitable or legal right to have contribution, in the

event either, in discharging the common debt, should pay more than a due proportion, is not founded upon the narrow doctrine that one is surety for the other, but upon the broad principle of natural equity, which comprehends suretyship as one relation and joint debtors as another. The genus includes both, but each species is distinct. Nor is joining with the husband in contracting a debt any assumption by the wife of his debt; for he has no debt existing to be assumed, and the debt created is her own from the beginning. Moreover, there is nothing contrary to public policy in allowing husband and wife to unite their joint credit in procuring the means of supplying joint resources in the shape of a home, or a place of business from which to derive an income for the support of the family. Very often it would contribute to the well-being and prosperity of both, and to the permanent good of the family. No doubt such a power can be abused and misapplied, but this is no reason for not recognizing its existence, or why the law should not tolerate it, if on the whole its results are beneficial rather than pernicious. At all events, we think the power exists at present under our law, and that the trial court erred in charging the jury to the contrary.

Several minor questions are made in the motion for a new trial, but having ruled that the court did not err in admitting parol evidence, but did err in ruling the controlling legal question in the case, we will not extend this opinion by any discussion of these minor topics, merely saying as to them that they will be of no consequence when the case is tried correctly in the light of what we have said above. *Judgment reversed.*