## 12015.   KNOX *v.* HARRELL *et al.*

HILL, J.   1. The rule relating to sequestration of witnesses does not apply when the witness is a party, although there may be several parties on one side and all are intended to be introduced as witnesses, as all have the right to remain in court during the entire trial. *Georgia R. Co.* v. *Tice,* 124 *Ga.* 464 (3) (52 S. E. 916, 4 Ann. Cas. 200).

2. Where letters which would be admissible in evidence are lost or destroyed, their contents are provable by parol, after proof of loss or destruction. Civil Code (1910), § 5829; *Marietta Savings Bank* v. *Janes,* 66 *Ga.* 286 (2).

3. Though, a wife may contract as a feme sole, she cannot bind her separate estate by any contract of suretyship or by any assumption of the debts of her husband, nor sell her separate property to pay her husband's debts. Civil Code (1910), §§ 2993, 3007. A note made by the wife for a debt of her husband and indorsed by him, where the payee of the note knows this fact at the time of its execution, cannot be collected from her by the payee. A deed executed by the wife to the payee of such a note does not bind her separate estate. This is true although the note and the deed were made by the wife to secure a loan contemporaneously made to the husband. *Gross* v. *Whitely,* 128 *Ga.* 79 (57 S. E. 94) ; *Klink* v. *Boland,* 72 *Ga.* 485.

4. Whether a transaction between husband and wife and a third person, in which the wife executed her note, with her husband as indorser, payable to the third person, ostensibly in payment of stock in a corporation held by the third person, the certificate therefor being issued to the wife and indorsed by her and delivered to the holder of the note as collateral security, was a bona fide transaction by the wife for her own benefit, or was only a colorable scheme, entered into knowingly, for the purpose of paying the husband's debt or becoming his security, were questions for determination by the jury. The evidence in the instant case was amply sufficient to support the defense set up by the wife, that the entire transaction between the plaintiff and herself and her husband was purely colorable in so far as she was concerned, and constituted a scheme and device and an attempt on the part of the plaintiff to make her surety for her husband and to bind her separate estate to pay her husband's debts. The charge of the court was a full, accurate, pertinent, and exhaustive statement of the law applicable to the issues made by the pleadings and evidence. The judgment refusing another trial to the plaintiff was correct.

   *Judgment affirmed. Stephens, J., concurs. Jenkins, P. J., dissents.*

JENKINS, P. J., dissenting. Under the facts of this case and the principles of law laid down in *Hull* v. *Sullivan,* 63 *Ga.* 127, *McDonald* v. *Bluthenthal,* 117 *Ga.* 120 (43 S. E. 422), *Simmons* v. *International Harvester Co.,* 22 *Ga. App.* 358 (5) (96 S. E. 9), and *Schofield* v. *Jones,* 85 *Ga.* 816, 819 (11 S. E. 1032), it is my opinion that the evidence demanded a verdict in favor of the plaintiff. See also *Georgia Medicine Co.* v.

*Hyman,* 117 *Ga.* 851 (45 S. E. 238); *Tinsley* v. *Gullett Gin Co.,* 21 *Ga. App.* 512(2), 516 (94 S. E. 892).

DECIDED MAY 2, 1921.

Complaint; from city court of Savannah — Judge Freeman. November 6, 1920.

Application for certiorari was denied by the Supreme Court.

Mrs. Cora B. Harrell, as maker, and her husband, as indorser, were sued upon a promissory note payable to the plaintiff, R. H. Knox. No defense was made by the husband. The wife pleaded that she was not liable on the note, because it was given in a transaction which was a colorable scheme or device to make her a surety and bind her and her separate estate for the payment of a debt of her husband; that Knox was the president and a stockholder of a certain corporation, and entered into an arrangement with her husband under which her husband was to purchase a half of the stock of the corporation and become its vice-president and the manager of its business; that her husband contracted for the purchase of the stock and became indebted for it, but was unable to pay the debt, and that Knox proposed to her husband to advance to him the money to pay for the stock if she would make a note to Knox for the amount, indorsed by her husband and secured by a deed from her to certain real estate owned by her, the stock to be issued to her as a pretended purchaser and then transferred to Knox in blank as collateral security for the note; that accordingly, at the request of her husband, she executed the note sued on, and the security deed, and the stock was issued in her name and transferred as security, and that this transaction was a mere colorable scheme or device as stated above. She admitted that the plaintiff would be entitled to recover if she should fail to establish this defense, and she assumed the burden of proof. The trial resulted in a verdict in her favor and against her husband. The plaintiff's motion for a new trial was overruled, and he excepted.

As to the defense set up by Mrs. Harrell, the court, after stating the contentions of the parties, charged the jury as follows:

" It is essential for her to establish the facts set out in this plea, to set up and establish that this was not a purchase by her; that it was colorable; that Knox got her husband to persuade her to enter into this arrangement, and to receive and transfer these papers, not as a transaction with her, but to cover his contract and his deal,

and to procure security to his debt by the pledging of her property. The burden is upon Mrs. Harrell to establish, by a preponderance of the evidence, the truth of her allegations contained in that plea. Unless she has done that, she has not carried the burden upon her, put there by the law, and she cannot prevail. If she does establish it by that preponderance of the evidence, she can prevail."

"The defense outlined is based upon two provisions of the law, one of which says that a wife's property shall not be liable for the payment of any debt, default, or contract of her husband, and the other of which says that, while the wife may contract, she cannot bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband. In this case, this being a suit upon a promissory note, actually signed by her, a married woman, the burden is upon her, as stated, to establish the truth of the plea that the note was given in settlement of the debt of her husband, or in the suretyship on a contract of her husband. If you find, from the evidence, that the contract sued on was not given for a debt of Harrell, but was given for the purchase-money of stock bought by Mrs. Harrell, and that she, knowing that fact, also executed a security deed, or deed to secure debt to secure the note, and also transferred in blank the certificate of stock, for which it is claimed the note was given, then you would find for the plaintiff.

"Just here let me say that there is no evidence in this case that there was any prior debt before the making of the debt which is involved in the purchase of this stock and the giving of the note therefor. It does appear in the evidence that there were negotiations here precedent to that debt, but that those negotiations had not eventuated in a complete contract. The difference between Harrell's and Knox's contentions on that point is, Harrell claims that it was arranged that he was to be the real owner of this property when it was bought, and that his wife was to become a party to the papers and the transaction, to secure, by her promise to pay and by the pledge of her property, his debt. Knox, on the other hand, claims that that is not true; that, it having been ascertained that Harrell was in no position to buy and to carry out the terms of the proposed contract of sale, that transaction, or those negotiations, were declared off, and that he sold, not to Harrell, but to Mrs. Harrell, this stock.

"If, as a matter of fact, Harrell's statement is correct and it was a complete transaction, and a scheme to secure the credit of Mrs. Harrell to support his contract, then she is not liable. If, on the other hand, Knox is correct as to his contentions with reference to it, Mrs. Harrell is liable; for when a husband wishes to purchase property, but cannot make the payment required by the seller, or cannot give the security required, and the wife purchases the property, either directly or through the husband as agent, contracts and gives the required security in person, it is the same as if no sale to the husband had been contemplated, and the debt is hers.

"If you find, therefore, from the evidence, that Harrell expected or desired to purchase the stock, but could not meet the requirements of the seller, and that then Mrs. Harrell, the defendant, purchased the stock, gave her note therefor, and that the certificates of stock were indorsed by her and delivered as collateral to the note, then, in that case, you should find a verdict for the plaintiff; because the fact that the plaintiff refused to sell to the husband, because of his inability or failure to make a cash payment required by the plaintiff, would not prevent an immediate sale of the same property to the wife, and if title to the property was, with her knowledge, conveyed to her, and she executed her note for the same and transferred the stock to the payee of the note as collateral, she does not thereby assume the debt of her husband, nor is she surety for him, but is liable as principal and purchaser.

"Now, here is a request, that, if you find from the evidence that W. F. Harrell never did owe the plaintiff anything prior to the giving of the note, that the note was given by Mrs. Harrell for the purchase-money of stock, that the stock was indorsed by her for collateral security, and that Harrell the husband of the defendant did not owe the debt represented by the note, then it would be your duty to find a verdict for the plaintiff. That is another way of saying what I have said to you once or twice already. In connection with that, you bear in mind my statement to you that there is no evidence in the record of the existence of any debt prior to this one, and the question to be determined is whether the debt represented by this note signed by Mrs. Harrell as maker and W. F. Harrell as indorser was and is W. F. Harrell's debt, or whether or not it is the debt of Mrs. Harrell and whether or not in the trans-

actions she was simply becoming surety and pledging her property for the debt of her husband. If, as I said before, it was her transaction, she is liable. If it is his transaction and the contract is colorable, and the result of a scheme to secure security as collateral to his undertaking from her property and on her credit, then she is not liable.

"Now, as to the reading of the papers in this case, I charge you whether or not Mrs. Harrell in fact read these papers before she signed them, and whether she was ignorant of the contents and effect of the papers when she signed, if she had an opportunity to read them and know of their contents and did not exercise that right, if she could have read them and did not do so, and if her failure to read such papers was not due to any fraud or misrepresentation of Knox, but was due to her own neglect, or to her reliance upon her husband's statement, then she would be bound by the papers as fully as if she had read and thoroughly understood them at the time she signed them,— unless you find that she was kept in ignorance of the true status and effect of the papers by her husband, and also that Knox knew of that.

"Now, it is true also that husbands and wives may be jointly interested in an enterprise, and if, in this case, you find that they were jointly interested here, and that this debt is a joint debt of Mr. and Mrs. Harrell, or that it is a debt of hers, made by him for her benefit in the purchase of the stock for her, and she signed the note with her husband as security or indorser, and no fraud of the plaintiff is shown, then you will be authorized to find for the plaintiff against the defendant, Mrs. Harrell.

"So you will observe that as this matter has developed in the evidence, the bona fides of the transaction, so far as Knox is concerned, is involved in it. The principle is that a married woman's note is valid, and the burden, of course, is upon her to show the contrary, and that Knox knew of its invalidity. Applying that law to this case, if he committed no fraud upon her, if he had no part in any scheme or device to defraud her, and if he knew of no such scheme or device by the husband, if the husband committed any, then he would not be bound by what had been done without his knowledge or not by himself. A husband may be a wife's agent to carry on any business in which she thinks proper to engage."

*Travis & Travis,* for plaintiff.

*Seabrook & Kennedy,* for defendant.

JENKINS, P. J., dissenting. In my opinion, the evidence in this case demanded a verdict in favor of the plaintiff. In *Hull* v. *Sullivan,* 63 *Ga.* 127, it was held that "Where a person having property for sale, such as land and a steam sawmill, agreed upon the price with one wishing to buy, but who could not consummate the purchase on his own account, because some of the security required belonged to his wife, and thereupon the husband induced his wife to become the purchaser through him, and the contract was thus consummated, the conveyance of the property being made directly to the wife, and she giving her notes and mortgage for the purchase money, the mortgage embracing not only the property then conveyed to her, but also other property constituting her separate estate, she is bound as purchaser and mortgagor, if the seller and mortgagee committed no fraud upon her nor knew of any committed by the husband." This principle of law was restated in *McDonald* v. *Bluthenthal,* 117 *Ga.* 120 (43 S. E. 422), as follows: "The fact that the owner refuses to sell the husband because of his inability to give security does not prevent an immediate sale of the same property to the wife; and if title to the property is, with her knowledge, conveyed to her, and she executes a mortgage thereon and on other property belonging to her, to secure the purchase-money notes, she does not assume the debt of her husband, nor is she surety for him, but is liable as principal and purchaser." See also *Simmons* v. *International Harvester Co.,* 22 *Ga. App.* 358 (5) (96 S. E. 9). All of these cases are based upon the principle, laid down in *Schofield* v. *Jones,* 85 *Ga.* 816, 819 (11 S. E. 1032), that, where a creditor at the time the debt is created really and in good faith intends to extend the credit to the wife, and not to the husband, and the consideration for her promise passes legally and morally to her, the transaction will be treated as a valid one, provided the seller committed no fraud on her, and knew of none committed by the husband. See also *Longley* v. *Bank of Parrott,* 19 *Ga. App.* 701 (92 S. E. 232).

Thus, the mere fact that in the instant case there had been previous negotiations between the vendor of the corporate stock and the husband, whereby it had been originally proposed that the husband would become the purchaser thereof, would not prevent a subsequent valid and binding sale between the vendor and the wife, provided her contract of purchase was not induced by fraud

or duress perpetrated upon her by the vendor, or by another with his knowledge. There is not the slightest evidence going to show that the vendor made any statement or resorted to any sort of artifice calculated to mislead the wife as to the true nature and character of the papers she was about to sign. It is absolutely clear and undisputed that the vendor and the husband had by mutual consent abandoned the original plan of procedure, whereby the husband was to become the purchaser. If, therefore, there was any fraud practiced upon the wife, the husband must necessarily have been the guilty party.

As to this the husband testified as follows: " When she got down to the office no new proposition was made Mrs. Harrell. She saw she was buying the stock, probably so. She signed the paper. I knew she was buying the stock. I did tell her the truth. As to whether I told her she was buying the stock or concealed the fact, I didn't conceal anything from her. I don't think I told her she was buying the stock." While it is true that the wife in her testimony states that she did not in fact understand the nature of the transaction at the time she signed the note for the purchase of her stock, and that she then and there thought and understood that she was merely becoming surety for her husband, there is, nevertheless, no denial by her of the unqualified statement of Knox, the vendor, that her husband fully explained to her the nature of the transaction. The rule is well settled that " one able to read, who executed a written contract without reading it, cannot avoid liability thereon because he signed without knowing the contents of the contract, when his so doing was not induced by any action or representation amounting to fraud on the part of the person with whom he was dealing." *Georgia Medicine Co.* v. *Hyman,* supra; *Tinsley* v. *Gullett Gin Co.,* supra. In the instant case not only did the defendant sign a note for the purchase of the stock, but, in order to pledge the stock as collateral, she also had to, and actually did, transfer and assign the stock-certificate itself; all this in the absence of any testimony whatever going to show any word or act on the part of either the vendor or the husband that could be calculated to mislead or deceive. As indicating knowledge of the transaction on her part, she afterwards as a stockholder attended two separate stockholders' meetings of the corporation; and she held the stock for a period of at least thirteen months after

she admits she fully understood the nature of the transaction, without any effort on her part to repudiate or rescind. It was during this period of admitted knowledge on her part that she attended one of the stockholders' meetings. It thus appears that during all of this period she was willing to receive the benefit of any enhancement of the value of the stock. In fact, in her testimony in reply to a question on cross-examination, she herself admits: "If I had gotten dividends, I suppose I would have felt differently about the investment."

It therefore appears to the writer that, in the absence of any proved fraud on the part of either the vendor or the husband, her contract of purchase, and her act in assigning the certificate of stock, constituted a legal and bona fide transaction, especially in view of her subsequent conduct in treating herself as its owner; and that she should not be permitted at this late day to repudiate and rescind her contract of purchase, which not only appears to have been originally bona fide, but which, by her acts and conduct, she has ratified and confirmed. In this connection see: Civil Code (1910), § 4305; *Hunt* v. *Hardwick,* 68 *Ga.* 100 (3 *a*) ; *Smith* v. *Estey Organ Co.,* 100 *Ga.* 628, 630, 631 (28 S. E. 392).