25922.   HERRON *v.* INTERSTATE LIFE & ACCIDENT CO.

DECIDED MARCH 18, 1937.

*R. Carter Pittman,* for plaintiff in error.

*McClure, McClure & Head,* contra.

MACINTYRE, J.   The Interstate Life and Accident Company filed suit against E. D. Herron and Eva G. Herron, husband and wife, on a promissory note apparently signed by both defendants as makers, and secured by a deed to certain realty, signed by both defendants, which the plaintiff alleged was given for money borrowed by the defendants. The plaintiff prayed for a judgment

and that the same be declared a special lien against the real estate. The husband filed no defense. The wife answered and denied that she was due the plaintiff anything, setting up that she signed the note and deed as surety for her husband, that she owned the real estate in fee simple, and her husband had no interest or title therein, and that she received no part of the proceeds of the loan represented by said note and security deed. The trial resulted in a verdict in favor of the plaintiff. The wife moved for a new trial on the general grounds, and by amendment added certain special grounds. To a judgment overruling her motion she excepted.

On January 23, 1919, J. H. Adams executed a deed to part of lot of land 61, 9th district and 4th section, Catoosa County, Georgia (the home place involved in this litigation), to E. D. Herron and his wife, Eva G. Herron. On August 28, 1922, E. D. Herron executed to his wife, Eva G. Herron, a deed to his interest in this land, and the title was still vested in her on June 16, 1927, when E. D. Herron and Eva G. Herron, executed a security deed conveying this land to the Hamilton Trust and Savings Bank of Chattanooga, Tennessee, to secure a note of that date, payable to the order of the Hamilton Trust and Savings Bank, in the principal sum of $17,000, due June 16, 1930. Upon the delivery of the deed and the note the Hamilton Trust and Savings Bank delivered to the makers thereof its check for $16,490 (the net proceeds of the loan), payable to the order of E. D. and Eva G. Herron. This check was indorsed by E. D. and Eva G. Herron. Mr. Herron admits his indorsement. Neither Mr. nor Mrs. Herron denies that she indorsed it personally, both saying they do not remember. Mrs. Herron says it might be her personal indorsement, she does not remember; while he says he might have indorsed for her, but if he did he had authority. Upon Mr. Herron's instruction it was deposited to the credit of the account of E. D. Herron in the Hamilton National Bank (the Hamilton Trust and Savings Bank was a subsidiary of the Hamilton National Bank). The account to the credit of which this check was deposited was maintained in the Hamilton National Bank and equally subject to the check of either E. D. Herron or Eva G. Herron. On or about June 22, 1927, the Hamilton Trust and Savings Bank sold this Herron loan to the Interstate Life and Accident Company,

transferred the note to the company, and received therefor its check for $16,561.23. Desiring to increase this loan, E. D. Herron, on December 27, 1927, executed a note payable to the order of Interstate Life and Accident Company, for $20,000, due December 27, 1930, bearing interest at six per cent., and executed and delivered to the Interstate Life and Accident Company their security deed to the land heretofore described, to secure said note. The check of the Interstate Life and Accident Company for $20,-000, dated December 31, 1927, and payable to E. D. Herron, was delivered to E. D. Herron, and by him indorsed and turned over to F. L. Underwood, treasurer of the insurance company, who was looking after the loan, and from the proceeds of this check the former loan with accrued interest was paid off, the papers canceled, and a check for $2973.48, the net balance, was given to E. D. Herron on January 4, 1928. This check was indorsed by E. D. Herron and deposited in the Hamilton National Bank, where it was subject to withdrawal by the check of either E. D. Herron or Eva G. Herron.

The fact that the Hamilton National Bank, the Hamilton Trust and Savings Bank, and the Interstate Life and Accident Company were variously involved in the transaction is of no legal consequence for the reason that F. L. Underwood was the vice-president of each of these companies and transacted all the business and was the agent of the three principals. The knowledge of the dual agent is imputable to his principals. *Carlton* v. *Moultrie Banking Co.,* 170 *Ga.* 185 (3) (152 S. E. 215). If we consider most favorably to the plaintiff the evidence with reference to the first loan, it appears that the loan was made to the husband and the wife jointly, and a security deed to their home place was executed as security for the loan; that this security deed was signed jointly by both husband and wife; that the check drawn on the Hamilton Savings and Trust Company was made jointly to both husband and wife; that the check was indorsed by both the husband and the wife and deposited in the Hamilton National Bank to the credit of the husband, with the right of either the husband or the wife to withdraw by check any or all of the funds in said account. Does the mere fact that the check was so indorsed, and that the husband so deposited it, require the court to say as a matter of law that the entire consideration passed only to the hus-

band, and that he was the real primary debtor and the wife was in the position of a surety? We think not. Does this mere fact of so depositing the check require the court as a matter of law to say that the husband and the wife did not, in a joint undertaking, unite their credit in the execution of a joint note, and that the money or consideration did not pass to them jointly without division for the full amount of the note? We think not. From the indorsement on the check made payable to both husband and wife, and indorsed by both the husband and the wife, the jury could have concluded that she at least appointed the husband her agent to receive this property, and that upon the consideration being thus received, the lender being no party to any arrangement or scheme between the husband and the wife of which borrowing of the money was the outcome, it became the joint property of both husband and wife. *Temples* v. *Equitable Mortgage Co.*, 100 *Ga.* 503, 507 (28 S. E. 232, 62 Am. St. R. 326). Underwood, the agent of the bank who handled all of the transactions in question for the three above-named companies, testified that he understood the money was to be used in financing the buildings on the home place; that neither he nor the plaintiff had any knowledge that the money was used for any purpose other than the joint use of this money by both husband and wife in thus financing said buildings. Later, according to the testimony of the plaintiff, when the husband and the wife, desiring to increase this loan, executed a new note signed by both the husband and the wife, and a new security deed signed by both the husband and the wife were executed to the plaintiff, and the plaintiff paid off the former loan, making a check directly to the lienholder for the amount of his lien, and then making a check to the husband alone for the balance of the new loan, the husband thereupon deposited this latter check in the same account in the bank under the same terms and conditions as he had deposited the former check, that is, it was subject to withdrawal by a check of either the husband or the wife. Does this additional fact of making the check payable to the husband, and depositing it in the account with the right of either the husband or the wife to withdraw any part or all of the same, require the court as a matter of law to say that the husband and the wife, in a joint undertaking, did not unite their credit in the execution of a joint note and deed, and that the money or other

consideration did not pass to them jointly without division? Considering the evidence relating to both the first and the second loans, would not the jury have been authorized to find that the last check was made to the husband alone as the most convenient way of getting the money into the same account into which the former loan on the home place had been deposited, and that there was no arrangement or scheme, of which the plaintiff knew, to appropriate the wife's property to the payment of the husband's debts? *Bennett* v. *Danforth,* 36 *Ga. App.* 466 (137 S. E. 285).

While a married woman may contract, she can not bind her separate estate by any contract of suretyship; and if by any arrangement or scheme a loan is made to the husband, and the wife's part in the transaction is directly or indirectly to secure the loan made, not to her, but to her husband, by hypothecating her land, the loan is not collectible from her. "The spirit and purpose of the statute is to prevent the appropriation of the wife's property to the payment of a secondary or collateral liability." *Gross* v. *Whitely,* 128 *Ga.* 79, 82 (57 S. E. 94). "Where a joint note is executed by a husband and wife for a consideration of money or goods afterwards to be advanced or furnished by the payee, in the absence of a partnership undertaking between husband and wife, 'the wife is bound only to the extent of so much of the consideration as she afterwards receives.'" *Daniel* v. *G. Ober & Sons Co.,* supra. And if the plaintiff can not show clearly what amount the wife received by virtue of the joint note, she is not liable. *Jones* v. *Harrell,* 110 *Ga.* 373 (2) (35 S. E. 690). Where the wife executes a deed conveying her property for the purpose of extinguishing her husband's debts, in pursuance of a plan or scheme participated in by the grantee in the deed, such deed is void. If the deed was given to secure a part of the wife's individual debts, and the remainder to secure the husband's individual debts, the deed itself can not be upheld, for it is indivisible and void, because given to secure the debt of the husband; and being an entire individual transaction, it is impossible to separate that which is legal from that which is illegal. *Bond* v. *Sullivan,* 133 *Ga.* 160 (2) (65 S. E. 376, 134 Am. St. R. 199); *Carlton* v. *Moultrie Banking Company,* supra. Where the husband and the wife sign a note jointly as joint principals, and there is nothing in the note to show that one is surety for the other, the presump-

tion is that both are liable as joint principals. *Lovelady* v. *Moss,* 50 *Ga. App.* 652 (2 *a*) (179 S. E. 168). And where the husband and the wife thus apparently unite their credit in the execution of a joint note, and where the creditor at the time the debt is created really intends in good faith to credit the husband and the wife jointly as principals in a joint undertaking, and not the husband as principal and the wife as surety, and the consideration for their promise passes legally and morally to the husband and the wife jointly without division, and where the writing executed is such as purports to bind them for the debt as their joint debt, then, whatever may be the private understanding between the wife and the husband, in which the creditor is not concerned, and in which he has no interest as to the disposition, by either the husband or the wife or both of them, of the consideration so received by them, the writing is to be treated as embracing the true substance of the contract. *Morris* v. *International Agricultural Corporation,* 53 *Ga. App.* 517 (5) (186 S. E. 583) ; *Daniel* v. *G. Ober & Sons Co.,* supra.

On the face of this contract it was a joint debt of both husband and wife, and both the note and the security deed were their papers. Prima facie it was a joint contract that the wife could legally make. Under proper pleadings, if the contract was introduced in evidence, then the wife could go forward with her proof and show that the husband individually received a part of the consideration (money), and perhaps that she individually received an undetermined or indefinite part of the consideration (money). Then the plaintiff could go forward with its proof and show the amount the wife received; but in order to recover against the wife it must clearly show what amount she received and could recover only the amount so shown; or the plaintiff could go forward with its proof and show that the husband and the wife received the consideration without division. Of course the husband, when properly constituted an agent to represent either his wife or the partnership composed of himself and his wife, could receive the money in behalf of his principals just as though the principals themselves had received it. The wife in effect pleaded that the entire consideration went only to her husband and passed only to him, and that he was the real primary debtor, and that she was in the position of a surety, and that the payee had knowledge of

this fact. The testimony of the wife and the husband substantiated this plea. They both testified that the wife received no part of the proceeds of the loan. However, the jury seems to have believed the evidence of the plaintiff, and resolved the issue in its favor. The defendant set up in her answer that she executed said note and security deed as surety for her husband, E. D. Herron; that she received no part of the money borrowed; and that "by reason of said suretyship the purported obligation of the defendant to petitioner is absolutely void." The wife in her plea thus states that all of the money borrowed was received by the husband, that she was merely the surety, and that as to her the obligation was absolutely void. The plaintiff claimed that all of the money borrowed was received by the husband and the wife jointly, and in supporting its contention traced a little over $2000 which went into the home on the premises which was covered by the joint security deed. This evidence by the plaintiff was not introduced for the purpose of showing that the wife was liable for the particular part she individually received for her own individual purposes, but was introduced as a circumstance to show that all of the money was borrowed by the husband and the wife jointly, to be used in the joint enterprise of building their home, and was so received for that purpose, thus refuting at least a part of their statement, that the husband received all of the money borrowed. Therefore we do not think the court erred in failing to charge the jury, in the absence of a timely written request, that if the consideration of the note sued on was partly that of the defendant and partly that of the husband, the plaintiff would be entitled to recover of the defendant that portion of the debt which was received by her. We think the court charged the jury on the general features of the law which controlled the substantial issues made by the pleading and the evidence. *Strickland* v. *State*, 98 *Ga.* 84, 88 (25 S. E. 908); *Veal* v. *Veal*, 50 *Ga. App.* 445 (3), 447 (178 S. E. 456); *Lang* v. *Aldred*, 51 *Ga. App.* 91 (179 S. E. 567). The evidence was sufficient to support the verdict, and the court did not err in refusing a new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*