UNITED STATES of America

v.

Sidney F. FROST and Pansy Annell Frost.

Civ. A. 346.

United States District Court
M. D. Georgia, Athens Division.

Feb. 27, 1957.

Robert B. Thompson, Asst. U. S. Atty., Macon, Ga., for plaintiff.

Orrin Roberts, Monroe, Ga., for defendant.

BOOTLE, District Judge.

The question is whether the wife, sued with her husband on two promissory notes, has made good her defense of suretyship. The notes, one for $7,000 dated September 18, 1952, the other for $500 dated June 17, 1953, are signed by Pansy Annell Frost, the wife, and Sidney F. Frost, the husband, ostensibly as makers, the wife signing first and the husband second on the larger note, and the husband first and the wife second on the smaller note. Both notes are payable to the Administrator of the Farmers Home Administration. The husband makes no defense and the case is in default as to him. The wife admits that she signed the notes and that the balance sued for has not been paid, but says that she is not liable for that she was merely a surety for her husband.

The case was tried to the Court without a jury and I find the facts to be as herein stated.

Sometime in 1952, approximately two months prior to the date of the first note, the husband visited the office of the Farmers Home Administration in Walton County, Georgia, and made application for a loan. Either then, or sometime thereafter, the County Supervisor, N. A. Cown, advised him that the Administration could not lend to him alone and that in a case like this, where the wife owned the land, the regulations required that if a loan be made it would have to be a joint loan. After this initial visit to Mr. Cown's office, Mr. Cown, on more than one occasion, called on the defendants at their home and discussed with them various pertinent aspects of the proposed loan and the establishment of a long-time farm and home plan in connection therewith. On these occasions he conferred with both defendants. They set out plans of operation for the farm. They agreed on crops and acreage on the farm. On September 12, 1952, some two months after the original visit of the husband to Mr. Cown's office, both of the defendants and Cown signed this plan by which the defendants agreed "to follow this plan and to discuss with the County Supervisor any important" deviations therefrom. The plan covered the calendar year 1953 and indicated that the farm was to be operated by the owner rather than any lessee. Cown then knew that the farm was owned by Mrs. Frost. Section A of the plan contains a joint financial statement of the defendants and includes the value of the farm, crops, livestock, dairy equipment, household furniture and fixtures, the value of the land and buildings constituting approximately 50% of the total value of the assets owned by the defendants. Section D of the plan shows that the construction of a silo was contemplated for April, 1953 out of funds realized from milk income.

Contemporaneously with the above mentioned plan there was executed also a "Long-Time Farm and Home Plan" signed by the same three persons looking to the establishment of a Grade A dairy, which was to be in full operation by 1957. Almost all of the 95 acre farm was to be utilized for this purpose. This plan contemplated the acquisition of $4,800 worth of livestock, machinery and equipment and the expenditure of $825 on real estate improvements.

Although the original loan voucher was signed September 12, 1952 and the original note September 18, the loan was not approved by the State Director

until November 4th, and the check was not issued until November 18, 1952. In the meantime, Cown authorized the defendants to purchase an unstated number of dairy cattle in anticipation of the loan. This purchase was financed by a temporary loan from the National Bank of Monroe, Georgia, evidenced by a promissory note for $2,515, dated October 22, 1952, payable to the Bank, signed by the husband. All parties understood that this note would be satisfied from the proceeds of the Government loan.

A check covering the first loan was issued November 18, 1952, in the amount of $7,000, payable to the husband and the wife and was endorsed by both of them "for deposit only to the account of Sidney F. Frost subj. to FHA countersignature". On November 25, 1952, it was deposited in the National Bank of Monroe to the credit of "S. F. Frost & F.H.A.". On the same day of the deposit, a check payable to the National Bank of Monroe was drawn against the account marked "bill in full to date" and paid the $2,515 note above mentioned and an additional indebtedness of $2,210.50 owed to the Bank by the husband, which latter indebtedness was secured by certain collateral which, together with the collateral for the $2,515 note, was conveyed to Farmers Home Administration by a bill of sale to secure debt dated the same day, November 25, 1952. This bill of sale was executed by husband and wife, as were subsequent bills of sale dated December 1, 1952, February 3, and July 30, 1953.

One other disbursement from the $7,000 loan is accounted for; namely, a $639 check dated December 3, 1952, labeled "wire, posts & fert.". The evidence does not account for the disposition of the remainder of the deposit.

In 1953, either the Health Department or the purchasers of the milk required the defendants to construct another building on the farm in connection with the dairy. The $500 loan was made to the husband and the wife for this purpose. A check for that amount, dated July 24, 1953, was made payable to them jointly, and was, by them, jointly endorsed. Its proceeds were used to construct the said building.

In the actual operation of the dairy, the wife was as active as the husband, if not more active. He was occupied with sawmilling and his attention to the dairy was confined to early morning and late evening activities while she was on hand throughout the day working generally in furtherance of the dairy operations and being specifically in charge of the milk room. She conferred with Cown about the dairy business on his visits and also with the County Health Officer and the representative of the purchaser of the milk. After the indebtedness became delinquent, the wife, in her discussions with Mr. Cown, never denied her liability and suggested, on occasions, paying by selling the farm or by selling some dirt therefrom.

Cown testified that he discussed the making of the loan at length with both defendants and made it known to them that unless Mrs. Frost joined her husband in making the loan it would not be granted. The husband testified that Cown told them the loan could not be made to him alone, but would have to be a joint loan. The husband and wife testified that Cown told them that the wife would not be liable on the note and that it was a routine matter for her to sign it. They testified further that Cown told them she would not lose her farm by virtue of her signing the note. Cown, on the other hand, specifically denied that these statements were made by him. He testified that he did tell the defendants that it was not a requirement that the farm be pledged for the loan. The Farmers Home Administration does not usually require security deeds to secure operating loans like these.

■ Considering all of the evidence, oral and documentary, I find that these were joint loans made to both of the defendants. Insofar as this case is concerned, they were in the dairy business

together. At the inception of this operation, neither the husband nor the wife was indebted to the Farmers Home Administration, that is, there was no pre-existing indebtedness. This indebtedness was incurred jointly by the two defendants and both of them are equally liable to the plaintiff. "The contract of suretyship is one whereby a person obligates himself to pay the debt of another * * *". Section 103–101, Georgia Code Annotated. Here the wife has not contracted to pay the debt of another, but has contracted to pay the joint debt of herself and her husband. Therefore, Section 53–503, Georgia Code Annotated, providing that "she may not bind her separate estate by any contract of suretyship nor by any assumption of the debts of her husband", avails her nothing.

█ Where two persons sign a note apparently as joint principals and there is nothing in the face of the note to indicate that one is principal and the other is surety, the law presumes that both are principals. This presumption is rebuttable, of course, but the burden is on those asserting suretyship to establish it. Trammell v. Swift Fertilizer Works, 121 Ga. 778, 49 S.E. 739; Bank of Lumpkin County v. Justus, 150 Ga. 286, 103 S.E. 794; Duckett v. Martin, 23 Ga.App. 630, 99 S.E. 151; Hill v. Driskell, 15 Ga.App. 458, 83 S.E. 859; Seymour v. Bank of Thomasville, 157 Ga. 99, 121 S.E. 578. This rule applies also where, as here, the note is signed by husband and wife. Kenimer v. Henderson, 32 Ga.App. 203, 122 S.E. 820; Herron v. Interstate Life & Accident Co., 55 Ga.App. 534(4), 190 S.E. 631; Lovelady v. Moss, 50 Ga.App. 652, 179 S.E. 168; Allmond v. Mount Vernon Bank, 53 Ga.App. 565, 186 S.E. 581; Gunn v. A. L. Wilson Co., 20 Ga.App. 14, 92 S.E. 721. Furthermore, the burden is on the wife in this case to show not only that she signed the instrument as surety only, but also that the payee of the note knew that she was attempting to bind herself only as surety and that the payee, with such knowledge,

contracted with her as surety. Dye v. Richards, 210 Ga. 601(1), 81 S.E.2d 820; Allmond v. Mount Vernon Bank, supra.

█ While it cannot be said that the wife received no benefit from these loans, the checks having been made payable to her jointly with her husband and she having endorsed them, and some of the money having been expended for wire, posts, fertilizer and a new building on her farm, a married woman may, under the law, as an original undertaker, become liable on a debt incurred by her whether or not she receives benefit therefrom. Shoup v. Elliott, 192 Ga. 858, 862, 16 S.E.2d 857; Freeman v. Coleman, 86 Ga. 590, 12 S.E. 1064; Saxon v. National City Bank, 169 Ga. 784, 151 S.E. 501; Tuggle v. Duke, 42 Ga.App. 634, 157 S. E. 224.

█ A husband and wife may legally enter into a joint contract or undertaking where the consideration passes to them jointly, and in such event the wife is personally bound. Purdue v. Barber, 184 Ga. 512, 192 S.E. 16; Schofield v. Jones, 85 Ga. 816, 11 S.E. 1032; Roan v. Union Central Life Ins. Co., 181 Ga. 335, 182 S.E. 21; Braswell v. Federal Land Bank of Columbia, 165 Ga. 123, 139 S.E. 861.

██ The fact that a portion of the proceeds of the first loan, $2,210.50, went to pay a previously existing debt which the husband owed to the National Bank of Monroe, together with the $2,515 which went to pay the debt incurred for the purchase of cattle pending the consummation of this Government loan, does not convert the wife's obligation into one of suretyship. As has been previously pointed out, there was no pre-existing indebtedness in favor of Farmers Home Administration and I find that Cown was not a party to any arrangements or scheme between the husband and wife whereby she would become surety for any indebtedness of the husband. A married woman may borrow to pay her husband's debts and may give a binding note and mortgage

or security deed, although the lender may know the purpose of the loan, if the lender is not the husband's creditor and is not a party to any arrangements or scheme between the husband and wife of which the borrowing of money by her for such purpose is the outcome. Purdue v. Barber, supra; Wilson v. Cummings, 196 Ga. 17, 25 S.E.2d 656; Edwards v. Warnell, 177 Ga. 469, 170 S.E. 365; Garrett v. Thornton, 157 Ga. 487, 121 S.E. 820; Jackson v. Reeves, 156 Ga. 802, 120 S.E. 541; Ross v. Durrence, 181 Ga. 52, 181 S.E. 581; Roan v. Union Central Life Ins. Co., supra.

Accordingly, counsel for plaintiff may prepare a finding and judgment against both defendants for the full amount sued for and submit them to counsel for the defendants, who shall have five days for suggestions as to form.