FREEMAN *et al. v.* THE MUTUAL BUILDING AND LOAN ASSOCIATION *et al.*

1. When a lender of money to a married woman not only knows that she borrows it to pay a debt of her husband, but aids him in forming and executing a scheme by which the loan is to be made upon the security of her property, the delivery of the money to her being a mere matter of form, he being the real borrower, the debt for the loan is not her debt, and a mortgage given by her to the lender to secure the same is void. This being the state of facts alleged in the petition in the present case, upon the assump-

tion that the secretary and treasurer of the association was authorized to make loans in its behalf without the sanction of any superior officers, such as a board of directors, the evidence supported the petition; but if he had no power to make loans or accept propositions for borrowing money, and this power was lodged in such other superior officers as indicated, the part taken by the secretary and treasurer in planning and executing the scheme for borrowing would not be binding upon the association, unless it had notice thereof other than by the knowledge of that officer himself. As the petition was not demurred to, and no question as to the authority of the secretary and treasurer was raised by the answer, the court erred in granting a nonsuit.

2. It does not affirmatively appear from the evidence that the loan was usurious.                                   *Judgment reversed.*

August 23, 1892.

Husband and wife. Loan. Corporation. Officer. Usury. Before Judge MILLER. Bibb superior court. April term, 1891.

The petition in this case was filed by heirs at law of Mrs. Harriet Freeman, for injunction, relief, etc., its main object being to set aside a mortgage given by Mrs. Freeman to the building and loan association, on the ground that it was given to secure a loan procured by her husband from the association through Cubbedge, its secretary and treasurer, as the result of collusion between said husband and Cubbedge, for the purpose of paying the debts of the husband, with full knowledge on the part of the lender that the husband induced his wife to execute the mortgage on her property to secure the loan to him to procure money with which to pay his debts. It was further alleged that the mortgage was void for usury in the loan. A copy of the mortgage was attached to the petition. The answer of the building and loan association, denied any collusion, or that it was advised of the purpose for which the loan was desired, and alleged that the money was loaned to the wife, that she fully understood all the transactions in connection therewith, that the money arising from the loan was paid to her, and that there was due on the

mortgage a certain sum. The court granted a nonsuit, to which petitioners excepted.

Upon the trial Freeman, the husband, testified: I made application to the association through Cubbedge, its secretary and treasurer, for a loan. I told him my trouble, that I wanted to get this money, and told him at the time I had nothing I could offer as security, but could get my wife to mortgage her house and lot for it, and he said to me then that the stock would have to be put in her name, and I told him I was aware of that fact  I told him I wanted the money for myself and what I wanted with it, that I wanted to pay it to Virgil Powers. The money was obtained and was paid to Mr. Powers, part of it, and part of it went to pay for the stock. As to this stock Cubbedge got twenty shares for me, I do not know who from, and it was paid for out of the money before it was paid over to my wife. Included in the payment for stock was also payment for ten shares which I bought myself from Powers. The mortgage given by my wife was to secure the loan made to me. She had no concern in procuring the money, and it was all done by me and Cubbedge; all the correspondence and all the conversation was between me and Cubbedge. I told him fully what I wanted with the money, and that I wanted the loan to pay my note held by Powers. The money on the loan was paid my wife by Cubbedge, by my direction. I had an understanding with him that he was to take pay for the shares of stock, and there was something else, I do not remember, to be paid out of the money, and the balance of it to be paid by my direction to my wife. The association never made any loan to my wife, to my knowledge. Cubbedge was secretary and treasurer at the time. After I had made known to him my needs and wants for money and requested the loan, what I said to him was never changed by me. When he got the stock

he advised me about bringing down the papers to have
the deed examined, and afterwards wrote me that every-
thing was all right and the money ready. My wife had
nothing to do with it, except to execute the papers, go
and get the check and pay it to Powers for me; not one
cent of the money went to her purposes. Powers came
and told me what amount he got from her. I got the
benefit of the money for what it was paid for. I never
handled it, because I told my wife what to do with it.
The money was paid by her to Powers. I only know
from hearsay to whom the association paid it; they did
not pay it to me. I did not get any of it for my imme-
diate use. I was in Atlanta, I think, when she executed
the note and mortgage. I gave her a memorandum and
told her what to do with it, and could only answer by
what she told me as to the money being paid to Powers.
She attended to her own business; I attended to very
little for her; had no transactions for her at all. I owed
Powers the money for my individual debts. I did not
pay a dollar on the house and lot on which the mort-
gage was given. I knew when I applied to Cubbedge
for the loan that I had nothing to offer as security, and
so stated to him, that I went to use her property and bor-
row money on her credit, and would have to get her to
mortgage her property. I saw the money in her pos-
session. She purchased the house herself. I had noth-
ing to do with it. Since this loan Powers has not made
a demand on me for money. It is my wife's signature
to both the mortgage and check.

Plaintiff put in evidence a letter signed by Cubbedge,
secretary and treasurer, to Freeman, stating that the
papers had all been put in proper shape, and asking
whether Freeman would come down to have them ex-
ecuted, or should the writer get Mrs. Freeman to do it
and pay the money over to her, "which will have to

be done in any event of course," and that the entire amount of money was ready.

Plaintiffs then announced that they would rest; whereupon defendants moved to dismiss the case, on the grounds that the allegations in the petition had not been sustained, and that the proof did not show that there was ever any mortgage or note given, nor that the as-·sociation held any debt against Mrs. Freeman, and failed to show the transaction between Mr. and Mrs. Freeman; and on the further ground, that it was ad-·mitted the money was paid to Mrs. Freeman in the check, and that it did not appear what was done with the money, but that the proof left the money with her, and there was no proof entitling plaintiffs to recover. Plaintiffs then introduced Powers, who testified that Mrs. Freeman paid him a debt for her husband, amounting to $2,300, on January 23, 1888 (this was the date of the copy mortgage attached to the petition, and Cub-bedge's letter to Freeman was dated January 18, 1888); that witness did not know where she got the money; that she herself did not owe him any money at the time, but the money was paid for the debt that Freeman owed; and that Freeman was not with her. Freeman, recalled, testified, that up to the time of the loan from the association, on or about January 23, 1888, his wife did not have $2,300 in money; and that Cubbedge made the statement next to be mentioned. Plaintiffs then put in evidence a statement from the association, dated January 23, 1888, purporting to be the account of Mrs. Freeman with it. By it she was credited with "net proceeds of $6,000 bid off on thirty shares of stock for her on January 12th, at fifty-eight per cent. premium, being the then minimum, $2,500," and charged with amount paid for her for twenty shares of stock, $140, dues and interest paid on thirty shares of stock, $60, and amount paid her in person, in cash, $2,320. At the conclusion

of this testimony the motion for nonsuit was renewed, and was sustained.

ESTES & ESTES, for plaintiffs.

GUSTIN, GUERRY & HALL and DESSAU & BARTLETT, for defendants.