## STRICKLAND v. PARLIN & ORENDORF COMPANY.

1. Where suit is brought on a contract of purchase of certain goods and on promissory notes given, in accordance with this contract, as evidence of the indebtedness thereon, there is no error in refusing to require the plaintiff to elect as to whether he will sue on the contract or on the notes.
2. Where a dealer in goods in another State sends to a person in this State two unsigned papers, one an order for the purchase of a car-load of drills and the

other an order for a single drill, and such person, after keeping these blank orders for two or three weeks, hurriedly signs the one for the car-load, intending to sign the other, and without noticing the mistake sends the order, and the dealer accepts it and ships the drills, and the vendee thereafter notifies the vendor of the mistake, but subsequently receives the drills, pays the freight thereon, stores them, exposes some of them for sale, and sells one of them, the purchaser is liable in a suit brought by the vendor to recover the price of the goods.

3. A contract made by a drunken man is not void, though his intoxication be brought about by the other party, but is merely voidable at his election, and may be ratified by him expressly or by conduct inconsistent with its rescission.

4. Where one enters into a binding contract to give certain promissory notes for named amounts and subsequently gives them, fraud in procuring him to sign the notes or drunkenness at the time of their execution is no defense when the notes amount to no more than a compliance with his previous valid contract.

Argued May 7, — Decided June 3, 1903.

Complaint.   Before Judge Fite.  , Gordon superior court.   August 27, 1902.

*Starr & Erwin*, for plaintiff in error.
*J. M. Neel* and *Cantrell & Ramsaur*, contra.

SIMMONS, C. J.   The record discloses that Strickland, who lived near Calhoun, Georgia, had received from the defendant in error two forms of order for goods.   One of these was a form for ordering a car-load of drills with proper attachments; the other, for ordering one drill.   Strickland kept these order blanks for two or three weeks, and then, according to his testimony, suddenly concluded that as the season for selling drills was at hand, he would sign one of the orders.   He intended to sign the order for the single drill, but, having both before him, he by mistake signed the order for the car-load of drills, thinking he was signing the other.   The reason for his immediate hurry was that some one was passing on the way to town, and he signed in haste that he might give the order to the passer-by to take to one Neal, who was to mail it to the defendant in error.   Some time later Strickland discovered his mistake, either by receiving a communication from the defendant in error or because of information received from Neal.   After he ascertained that he had signed the wrong paper and had ordered a car-load of drills when he intended to order but one, he claimed that he wrote a letter notifying the defendant in error of the mistake and instructing them not to fill the order.   This letter, if any such

letter was ever written, was not introduced in evidence, although a notice to produce was given the plaintiff company; but a letter was introduced which Strickland stated was a postscript to the letter above mentioned. This "postscript" was as follows: "Just as I go to post this, I received your card stating you had received my order per contract for one car-load of drills. You will please not send car-load, as I do not know that I will need them yet. I will wait for awhile till I see how the trade is first. But you will please send me one disc drill for sample at once, also ship with drill literature. I do not want the chain cover. Yours, etc. R. L. Strickland." On August 9, 1898, eight or nine days after the order for drills was sent, Strickland sent another letter asking the company, if it accepted his contract, to "change it just a little and make the first payment due first of November instead of first of October," giving as his reason for this request that "the cotton crop is our money crop, and it never gets on the market till the first of November." The car-load of drills arrived at the destination shortly thereafter. Strickland received them, paid the freight, and stored the drills in a warehouse. He took one of them out and exhibited it in the court-house square during the session of court. He carried one of them to Canton and another to Ellijay; one of these he sold, while the other is still at Canton. He exercised acts of ownership and control over the drills during the fall of that year, and "talked them up" in his endeavors to sell them.

The order sent to the defendant in error contained an agreement on the part of Strickland to give two notes for the purchase-price of the drills it being stipulated that these notes were to be received, not in payment, but merely as evidence of the indebtedness. In December, 1898, an agent of the defendant in error met Strickland in Calhoun. There Strickland signed two notes covering his indebtedness under the contract. The notes not being paid at maturity, suit was brought on them in the superior court of Gordon county. Strickland filed two defenses: (1) That he had made a mistake in ordering the car-load of drills and had notified plaintiff of such mistake and countermanded the order; and (2) that he had declined to sign the notes until the agent of the plaintiff gave him whisky and made him drunk, when he signed the notes without knowing what he was doing. The evidence relating to the plea of mistake and the rescission of the contract on that ground has already been re-

cited.    As to the plea of drunkenness, Strickland fully sustained
the allegations as to his having been drunk at the time he signed
the notes, except that he appeared to have remembered afterward
that he had signed them.    He testified that he at first refused to
sign them, that he went to the agent's room, where he and the agent
had divers and sundry drinks, and that he at last signed the notes.
He had a rather faint recollection of signing them.    The agent
denied having had any whisky in Calhoun, denied having taken
any drink or drinks with Strickland, denied that he had offered
Strickland any whisky, and denied that Strickland was intoxicated
at the time he executed the notes.    The evidence also showed that
Strickland did not give the company any notice as to how the notes
were procured, but that when they were sent to attorneys for collec-
tion, and one of the latter saw Strickland about the payment of the
notes, he simply asked indulgence without intimating how the notes
were obtained.    Strickland does not appear to have done anything
towards a disaffirmance or repudiation of the notes until after he had
been sued thereon.    At the close of the evidence, the court, on mo-
tion, directed a verdict for the plaintiff below.    Strickland filed his
bill of exceptions, assigning error upon the refusal of the court to
make the plaintiff elect whether it would rely upon the contract or
upon the notes, and also complaining of the direction of the verdict.

1. The petition declared upon the contract contained in the order
for the drills.    That order specified the goods and the price to
be paid therefor, and contained an agreement that the defendant
should give two promissory notes as evidence of indebtedness.
The petition declared also upon the two promissory notes, and
prayed judgment upon them.    In our opinion there was no error
in the refusal to require the plaintiff to elect.    The contract and
the notes constituted the same cause of action.    A recovery on
either would be for the purchase-price of the goods.    There could
be but one recovery, and the petitioner could seek that upon the
contract or upon the notes, or upon both.

2. Under the facts disclosed, Strickland was not entitled to a
rescission of the order containing the contract of purchase of the
goods.    If there was a mistake in ordering a car-load when he in-
tended to order but a single drill, it was brought about by his own
negligence, in which the plaintiff had no part.    He kept the order
blanks two or three weeks; and while he may have signed one of

them hurriedly and thus made a mistake, the plaintiff knew nothing of this, and did not in any way contribute to the mistake which he claims he made.   As far as the plaintiff was concerned, the contract was complete when the defendant deposited the order in the post-office, provided plaintiff accepted it.   Strickland testified that as soon as he discovered that he had signed the wrong order he notified the plaintiff of the mistake, but he did not testify that he wrote to it as to the reasons for the mistake or what was the mistake made.   Even if the order was signed by mistake, we think his subsequent conduct would amount to a ratification of the order and would prevent him from insisting now upon a rescission.   He did not deny that when the goods arrived at Calhoun he received them, paid the freight, and stored them in the warehouse.   He exhibited them in public, carried two of them to different counties, and sold one of them.   It is true he said he was "bothered in his mind" about the time the goods arrived, because he had a case in court; but it appears that, at that very term of court and "immediately" upon the arrival of the drills, he had time to exhibit one of them at the court-house square.   He also claimed to have sold the one drill in order to reimburse himself for the freight charges he had paid.   If he intended to rescind his contract on the ground of mistake, he should have declined to receive the goods or pay the freight charges.   He should have had nothing to do with them except to reimburse the vendor for any expense it might have incurred before it was notified fully of the mistake and of his intention to rescind.   As matter of fact there was no offer to return the drills or to place the vendor in statu quo.   Without this there could be no rescission of the contract.   Strickland stored and held the drills, and did not even notify the vendor that they were held subject to its order.   He instead exercised acts of ownership and control, and dealt with the drills as his own in a way that was totally inconsistent with an intention to rescind.

3. Assuming as true that the agent of the vendor furnished Strickland whisky and made him drunk for the purpose of procuring his signature to the notes, that did not render the notes absolutely void. The code declares that "A drunkard, when actually intoxicated to such an extent as to deprive him of reason, can make no valid contract with any one cognizant of the fact of his condition.   If the party contracting was at all instrumental in producing the state of

intoxication, the contract is invalid, however partial the intoxication may be." Civil Code, § 3654. Contracts made under these conditions are like the contracts of infants or lunatics,— not void but voidable at the election of the party after he is rid of his disability. Like the contract of an infant or lunatic, such a contract may be ratified. Ratification may be express, or may be implied from the acts or from the silence of the party. In the present case the conduct and silence of Strickland resulted in a ratification of the execution of the notes. He testified that he remembered having signed them, and that he signed them after dinner. There is no evidence in this record that, from the time he signed the notes in December, 1898, up to the time he filed his pleas in this case in March, 1902, he ever disaffirmed or gave any notice that he would not be bound by the notes, or that he was intoxicated when he signed them. On the contrary, there is evidence that when one of the plaintiff's attorneys saw him in regard to the collection of the notes, he asked for indulgence, and made no reference to any defense to the notes on the ground of intoxication. There is evidence that there was a former trial of a suit on one of the notes, but what was set up as a defense to that suit does not appear.

4. We are satisfied that the plaintiff in error was bound on these notes whether he was drunk or sober at the time they were executed. The contract contained in the order for the purchase of the goods provided that he should give these notes, and that they should be received, not in settlement of the indebtedness, but merely as evidence thereof. If that contract was legal and binding, and we think it was, the vendee was bound under the law to give the notes. When he signed them he was only carrying out the specific agreement or contract previously made. He had already assented to the contract, and the notes were merely further evidence of the indebtedness. That being true, what difference does it make whether he signed the notes when he was drunk or when he was sober ? They were for the purchase-money of the goods which he had ordered. The debt was valid and the contract binding; and if he did no more than the law would have required of him under his contract, his condition at the time of signing could make no difference. For the reasons given, there was no error in directing a verdict for the plaintiff company.

*Judgment affirmed. By five Justices.*