HAWKINS, administratrix, *v.* KIMBRELL, administrator, *et al.*

This was an action to cancel a certain deed executed by a married woman to her husband, and a contemporaneous deed executed by the husband to his creditor conveying the property as security for his debt. The ground alleged for the relief sought was that the deeds were parts of a transaction participated in by the creditor with the husband and wife, amounting to a mere colorable scheme whereby the property of the wife should be pledged by the husband as security for his debt, contrary to the provisions of the statute in such cases provided. Under one phase of the evidence it was a question for the jury to determine whether the transaction was a mere colorable scheme as alleged, or whether the deed from the wife to the husband was an absolute gift of the property in order that he might pledge it as security for his debt; and consequently it was erroneous to direct a verdict for the defendants.

No. 3939. September 20, 1924.

Equitable petition. Before Judge Searcy. Butts superior court. July 25, 1923.

On January 18, 1919, Lyda V. Martin, a married woman, executed a warranty deed to her husband, O. J. Martin, purporting to convey absolutely a described tract of land "for and in consideration of love and affection." On the same day O. J. Martin executed a

deed to W. L. Wilder, purporting to convey the land as security for a debt evidenced by three promissory notes amounting to $3000. The first deed was recorded January 21, 1919; and the second deed was filed for record January 21, 1919, and recorded the day following. O. J. Martin died July 12, 1920, and Lyda V. Martin died October 1, 1920. On October 3, 1921, the administratrix of the estate of Lyda V. Martin brought suit against Wilder and the administrators of the estate of O. J. Martin, to recover the land to be administered as a part of the estate of Lyda V. Martin, to cancel the deeds above mentioned, and to enjoin the sale of the property by the administrators of O. J. Martin, on the ground that the conveyance by Lyda V. Martin to her husband and the security deed by the latter to W. L. Wilder constituted a mere scheme to pledge property of the wife as security for her husband's debts, and thereby to avoid the statute prohibiting a married woman from becoming surety for her husband. The answers of the defendants denied that the transaction was a colorable scheme as alleged, and asserted that both deeds were valid and binding, and consequently that the plaintiff was not entitled to any of the relief as prayed.

G. V. Martin, a son of O. J. Martin and Lyda V. Martin, testified as a witness for the plaintiff: "The first part of 1919, I heard a conversation between my mother and father . . and W. L. Wilder, relative to a loan. It was at home . . in Butts County, Ga. The conversation was about a loan from W. L. Wilder to my father. W. L. Wilder said that my father owed him a little money, and my father wanted to borrow a little more, and if he should lend him the money would my mother make the deed over to my father. He was talking to my father and mother. My mother said she did not know just at that time; she would have to think the matter over. My father then said he wanted to borrow some more money, and wanted my mother to make deeds to him in order that he might do so."

Mary Elizabeth Hawkins, a daughter of O. J. Martin and Lyda V. Martin, testified as a witness for the plaintiff: "I know W. L. Wilder. He came to our house early one morning about the first of January, 1919; he called at the door and then came in. We were all around the fire. He, my mother and father, and the rest of the family were there. I heard the conversation between him and

my mother and father. Mr. W. L. Wilder told Mama that he wanted to loan Papa some money and wanted Mama to make Papa a deed to her land, and then for Papa to make him a deed. Mother said she would have to think about the matter, that she did not know. I cannot recollect anything that my father said to her. The land . . is all the land my mother owned. . . My father ran an account with Mr. Wilder at Mr. Wilder's store. I bought things that were charged to my father there."

A. K. Kimbrell, administrator of the estate of O. J. Martin, testified as a witness for the plaintiff: "I remember there was a receipt in the papers of O. J. Martin from W. L. Wilder, dated about the last of January or the first part of February, 1919. It was in the papers of O. J. Martin that were turned over to me as administrator. After I received the notice to produce it, I looked for it but failed to find it. I don't remember for what amount of money it was given. I don't think it was a very large amount. It was a receipt from W. L. Wilder to O. J. Martin."

The plaintiff also introduced the above-recited deeds, and the defendants admitted in open court that the plaintiff was the duly appointed and qualified administratrix of the estate of Lyda V. Martin. The plaintiff rested her case, and on motion the court directed a verdict for the defendants. The plaintiff excepted.

*H. M. Fletcher,* for plaintiff.

*C. L. Redman,* and *Cleveland & Goodrich,* for defendants.

ATKINSON, J. A married woman "cannot bind her separate estate by any contract of suretyship." Civil Code (1910), § 3007. Nor can she make a "contract of sale . . as to her separate estate with her husband, . . unless the same is allowed by order of the superior court of the county of her domicile." § 3009. But she can "give property to her husband," though "the evidence to support it must be clear and unequivocal, and the intention of the parties must be free from doubt." § 3010. In *National Bank of Athens* v. *Carlton,* 96 *Ga.* 469 (23 S. E. 388), it was held: "If a married woman conveyed land to her son for the purpose of enabling him to pledge it to a third person as security for a debt due, or to become due, to that person by the son, and this was a mere colorable transaction growing out of a scheme suggested by the creditor in order to make her in fact a surety for the son's debt, although she did not become nominally bound therefor, the

transaction was, as to her, contrary to law and void. If, on the other hand, there was no element of suretyship in the transaction, and the mother deliberately conveyed the land to the son simply to enable him to secure thereby his own debt, she was bound by her deed." This rule applies in cases of gift to a husband as well as to a son, as the wife can legally make a gift of her separate estate to either. The meaning of the rule is, that if the gift is not induced by fraud or duress upon the part of the donee or creditor, and is intended to be an absolute gift of the property, it will be valid and binding upon the wife, notwithstanding that the purpose for which it was made was to enable the son or husband to secure his debt; but that it will not be valid and binding if the gift was intended to be only for the occàsion, and the property to be returned to the donor after the debt had been satisfied. The intention of the donor may be found both in the deed and in extraneous evidence as to the circumstances under which the donation was made, just as the nature of a transaction may be looked to in cases of fraud. In the recent case of *Jackson* v. *Reeves,* 156 *Ga.* 802 (3) (120 S. E. 541), it was held: "A wife has the right to repudiate a colorable scheme or device by which she was induced by the creditor and her husband to assume the previous debt of her husband to such creditor without any consideration flowing to her, no matter how the true inwardness of such illegal and void transaction had been concealed."

On its face the deed is expressly a deed of gift, without any reservation or suggestion that its purpose was to enable the donee to secure his debt or that the property was to be returned to the donor after the debt was paid. The extraneous evidence tended to show that the purpose of the wife was to enable her husband to secure his existing debt and a loan of additional money. This much was within her power, notwithstanding the creditor was present and participated in the conversations with the wife leading up to execution of the deed. But this is not all. There was also extraneous evidence to the effect that the creditor stated to the wife that the husband "owed him a little money, and . . wanted to borrow a little more," and asked the wife whether, if he (the creditor) "should lend him the money," the wife would "make the deed over to" the husband. The wife replied that "she did not know just at that time; she would have to think the matter

over." At the same time the husband stated to the wife that "he wanted to borrow some more money, and wanted" the wife "to make deeds to him in order that he might do so." Other testimony was to the effect that the loan described in the deed was "all the land" the wife owned. There was other testimony substantially to the same effect, but that which is stated above is sufficient to indicate all the extraneous evidence that could throw light on the question as to the intention of the donor. The burden of proof was on the plaintiff, who was seeking to cancel the deeds. The language quoted above as setting out the conversations between the parties is somewhat equivocal, and might indicate an intention upon the part of the wife to make an absolute gift to the husband, or only to "make a deed to her property" in order that he might use it as a pledge for his debt. When this is considered in connection with the further fact that the land in question was all the land owned by the wife, it became a question for the jury to say whether or not the transaction was a bona fide gift to the husband, or a mere colorable scheme to enable the husband to pledge the wife's property as a security for his debt. In this view it was erroneous to direct a verdict for the defendants.

*Judgment reversed. All the Justices concur.*