SAXON *v.* NATIONAL CITY BANK OF ROME.

No. 7080.   January 18, 1930.

*Porter & Mebane,* for plaintiff.

*Wright, Wright & Covington,* for defendant.

Hill, J.   Mrs. Emma J. Saxon filed her petition against the National City Bank of Rome, to enjoin a sale of certain described property under power conferred in a deed given by her to the bank, to secure the loan of $1500, on the ground that the note and security deed were made to secure a debt of her husband, which was done under the direction of the bank and with full knowledge on its part that she was signing only as security for her husband, and not for any indebtedness of her own.   She also prayed for cancellation of the security deed as a cloud on her title.   The pleadings and the evidence show that the husband of the plaintiff, J. S. Saxon, was a cotton-buyer.   He asked the bank for the loan of $10,000 with which to carry on his business, and the bank's officers stated to him that if he would put up $1500 on deposit with the bank they would allow him to draw to the extent of $10,000, or lend him the $10,000.   He stated to them that he did not have the money, but that his wife had some property.   The bank offered to lend the money if Saxon would get his wife to sign a note for $1500 and give a security deed to certain property to secure the loan. . He took the note and deed to his wife for her signature.   She signed the note and deed and gave her husband a check for $1500; where-upon the bank deposited to his credit $11,500.   The bank avers that the loan of the money was an original transaction with Mrs. Saxon, not with her as surety for her husband; that he did not owe the bank any money at the time; and that the loan was made on the credit of the plaintiff alone.   The bank prayed for judgment for the amount of the note with interest, and that a special lien be set up against the property described in the security deed.   The judge directed a verdict for the defendant bank, and the plaintiff excepted, contending that the evidence demanded a submission of the issue to a jury.

The petition attacks the deed made by the plaintiff to the bank,

in the following language: "That all of said indebtedness is and was a debt and obligation of petitioner's husband to said bank, and the note and deed to secure debt above referred to was given and signed by petitioner as security for said debt of her husband, all of which was done at the direction and instance of said defendant and with full knowledge that your petitioner was signing only as such security for her said husband, and not for any indebtedness of her own. And the securing of petitioner to sign and indorse the same was a part of a scheme and device whereby said bank undertook to make petitioner liable for a debt advanced or to be advanced to petitioner's husband, and for which petitioner is not liable as a matter of law." The evidence, so far as material, was substantially as follows: The plaintiff testified that her husband brought to her home the deed and notes in controversy, and she signed them there; that she did not go to the bank; and that she simply signed the papers and handed them back to her husband. It appears from the testimony of Saxon and officers of the bank that in 1924 at the beginning of the cotton season Saxon went to the bank in order to make arrangements whereby he could borrow $10,000 to carry on his cotton business. The bank wanted him to put up $1500 as margin. He informed the bank that he had no property, but his wife had a home; and the officers stated to him that if Mrs. Saxon would borrow $1500 the bank would finance his cotton business; and in this way his arrangement for securing the money desired to finance his cotton business was consummated. He owed the bank no money at the time of the transaction. After the signing of the papers by Mrs. Saxon and on the same day, the bank loaned to Saxon $10,000. Mrs. Saxon signed the note to the bank for $1500 on September 2, 1924, and simultaneously executed and delivered to the bank the deed conveying the property in controversy. The $1500 was placed to her credit at the bank. About the same time she drew a check for $1500 on this bank, of the same date, payable to the order of her husband. This check was paid by the bank, and the money was placed to the credit of Saxon, the husband. He never gave the bank any obligation for the $1500. He handled the entire transaction between the bank and his wife. Shahan, an officer of the bank, testified that it was necessary for him to have the $1500 in the bank, in order for the bank to loan Saxon the $10,000; that he could have had a smaller margin, but that Saxon

would have been permitted to check on only eighty per cent. of the account.

As we view this case the controlling question presented for decision is whether Mrs. Saxon signed the note and security deed as security for her husband's debt. Under the uncontradicted evidence it appears that at the time the note and deed were executed and delivered no indebtedness existed from Mr. Saxon to the National City Bank of Rome, or any other person. It therefore appears to us that it can not be said that this loan was made to the wife in the nature of a security for a debt of the husband due either to the bank or to any one else. It appears that the husband had placed to his checking account in the bank the $10,000 which he had borrowed from the bank, and also the $1500 which the wife had borrowed upon her note and deed, which amount she had turned over to her husband, and that there was to the credit of Mr. Saxon in the bank the sum of $11,500. In these circumstances it can not be said that the wife was standing her husband's security for the $1500, or that the bank was taking her property, or the proceeds thereof, for the purpose of paying her husband's debt; for no debt existed at the time the note and deed were executed by the wife. A case very similar in its facts to the present is that of *Jordan* v. *Douglas Grocery Co., 27 Ga. App.* 296 (108 S. E. 139), where it was said: "For no reason assigned at the trial did the court err, under the pleadings in this case, either in rejecting the evidence that the defendant 'signed said note as security and that she signed said mortgage as security,' or in ruling out the evidence that 'she did not purchase the store from plaintiff and never ordered any goods from them and did not owe them anything.' The mortgage itself shows that the note was given for the purchase of a certain stock of goods. The only person who signed the note and mortgage was the defendant. It is not claimed that any other person was to have signed these papers and by mistake or fraud was prevented from doing so, and the petition contained no allegation of mistake or fraud whatever. Section 3538 of the Civil Code of 1910 says: 'The contract of suretyship is that whereby one obligates himself to pay the debt of another in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor.' The very essence of a contract of suretyship is that there should be some one liable as

principal. This necessarily contemplates that where such a note is given there must be at least two parties who sign it and are liable for the payment thereof, the principal and the surety. As only one person signed the note sued on, that person must necessarily be the principal, and the court properly ruled out all evidence offered to show that she was surety. Moreover the approved brief of evidence shows that practically all the evidence complained of as having been excluded was before the jury, and that it came from the defendant." As pointed out by the Court of Appeals, the very essence of the contract of suretyship is that there must be some one liable for the payment of the debt, the principal and the person alleged to be surety; and it follows that where one person only is shown to have signed the note sued on, that person must necessarily be the principal. So far as the evidence discloses in the present case, no "debt" existed between Saxon and the bank at the time that his wife secured the present loan.

In 32 Cyc. 23, it is said: "It is essential that there be a principal, and if a person undertake that another will pay or perform, there not being any legal liability on the part of such person to pay or perform, the promisor is the principal and not a surety." The evidence in the instant case discloses that the bank declined to extend the credit of $1500 to the husband, but did extend it directly to his wife, and this fact was known to both the husband and the bank; and under the uncontradicted evidence, if the present note and deed should be declared void on the ground that it was merely as a security for the debt of plaintiff's husband, the bank could not hold the husband liable therefor, for he was no party to the contract as principal or otherwise. It has been held repeatedly by this court that a wife can borrow money for the express purpose of giving it to her husband. Thus, in *Johnson* v. *Leffler Co.*, 122 *Ga.* 670 (50 S. E. 488), this court held: "While a wife can not bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, nor sell her property in extinguishment of his indebtedness, she may nevertheless, upon her own responsibility and voluntarily, enter into a contract for borrowing money and give her note therefor and a mortgage upon her property to secure its payment; and such a contract will be binding on her though the party with whom she contracts may know she intends to use the borrowed money for her husband's benefit."

In the recent case of *Braswell* v. *Federal Land Bank,* 165 *Ga.* 123 (139 S. E. 861), it was held: "A married woman may borrow money for the purpose of paying debts of her husband, and give her note and mortgage therefor, and such a contract will be binding upon her, although the lender may know, at the time the loan is made, that she is borrowing it for this purpose, if he is not the husband's creditor who is to be thus paid, and is no party to any arrangement or scheme between the husband and wife of which the borrowing of the money by her for such purpose is the outcome. *Chastain* v. *Peek,* 111 *Ga.* 889 (36 S. E. 967) ; *Rood* v. *Wright,* 124 *Ga.* 849 (53 S. E. 390) ; *Ginsberg* v. *Peoples Bank of Savannah,* 145 *Ga.* 815 (89 S. E. 1086) ; *Garrett* v. *Thornton,* 157 *Ga.* 487 (3) (121 S. E. 820) ; *Temples* v. *Equitable Mortgage Co.,* 100 *Ga.* 503 (28 S. E. 232, 62 Am. St. R. 326) ; *Nelms* v. *Kellar,* 103 *Ga.* 745 (30 S. E. 572) ; *Johnson* v. *Leffler Co.,* 122 *Ga.* 670 (50 S. E. 488) ; *Jackson* v. *Reeves,* 156 *Ga.* 802 (120 S. E. 541)." In *McCrory* v. *Grandy,* 92 *Ga.* 319, 327 (18 S. E. 65), speaking of the right of a wife, who is a real debtor, to borrow money for the purpose of giving or lending it to other persons, the court says: "She [the wife] can borrow money and pledge her separate estate for the payment thereof, and can lend the same money to her son, or to a firm of which he is a member, and the knowledge of the lender that she is borrowing the money for this purpose will not affect the validity of the transaction. *White* v. *Stocker,* 85 *Ga.* 200 [11 S. E. 604]." In *Schofield* v. *Jones,* 85 *Ga.* 816 (11 S. E. 1032), this court said: "But where the creditor, at the time of creating the debt, really intends, in good faith, to extend credit to the woman and not the man, and the consideration, as the writings are constructed, passes legally and morally to her, and she executes writings adapted to the nature of the transaction which purports to bind her for the debt as her own, then whatever may be the private understanding between her and her husband, unknown to the creditor and of which he has no reasonable grounds for suspicion, and as to how or by whom the consideration is to be enjoyed, the writings are to be treated as embracing the true substance of the actual contract on both sides. Nor does it matter in such case that the creditor's negotiations are all with the husband. The latter is competent to represent the wife as her agent, and this agency, like any other, if not actually created beforehand, may be manifested by ratification. If

the wife executes papers which by their nature import a ratification of the previous negotiations, and an acceptance of the terms and stipulations incorporated in the writings themselves, she is no less bound than if she had negotiated in person." And see *Deitch* v. *Bearo*, 26 *Ga. App.* 117 (105 S. E. 625); *Third National Bank of Columbus* v. *Poe*, 5 *Ga. App.* 113 (62 S. E. 826).

The cases cited by the plaintiff are different in their facts from the case at bar. Thus in *Summers* v. *Lee*, 10 *Ga. App.* 441 (73 S. E. 602), it appears that the husband was not only indebted to the bank making the loan, but to other persons, and that the attack was made upon the deed, not upon the ground of suretyship, but upon the ground that it was a collusive scheme to subject the wife's property to the payment of her husband's debt. This question is not involved in the instant case, for the reason already pointed out, that at the time of the making of the note and deed by Mrs. Saxon the husband was not indebted to the bank so far as the record discloses, or to any other person. In *Lee* v. *Johnson*, 162 *Ga.* 560 (134 S. E. 166), the indebtedness of the husband existed prior to the making of the deed by the wife which was attacked in that case. In *Parrott* v. *Smith*, 135 *Ga.* 329 (69 S. E. 552), a debt of the husband was involved, and the attack was made on the ground that the money of the wife had been used in payment of the debt of the husband. The same was true in *Central Bank & Trust Cor.* v. *Almand*, 135 *Ga.* 231 (69 S. E. 111), where an indebtedness existed between the husband, or the corporation in which he was interested, and the bank, at the time of the conveyance by the wife, and the conveyance was made for the specific purpose of securing certain prior indebtedness of the husband. So in *Cross* v. *Cordell*, 149 *Ga.* 383 (100 S. E. 365), the husband at the time of making the deed by his wife was indebted to the defendant, and the deeds were attacked on the ground that they were made by the wife in payment of the indebtedness of her husband, and that therefore they were void. In *Freeman* v. *Mutual Building & Loan Asso.*, 90 *Ga.* 190 (15 S. E. 758), the lender of the money to a married woman knew that she borrowed it to pay a debt of her husband, and aided him in a scheme for that purpose. The same thing applies to the cases of *Bank of Eufaula* v. *Johnson*, 146 *Ga.* 791, 793 (92 S. E. 631); *Jackson* v. *Reeves*, 156 *Ga.* 802 (120 S. E. 541); *Blackburn* v. *Lee*, 137 *Ga.* 265 (73 S. E. 1); *Ginsberg* v.

*Peoples Bank of Savannah,* 145 *Ga.* 815 (89 S. E. 1086); *Gross* v. *Whitely,* 128 *Ga.* 79 (57 S. E. 94); *Garrett* v. *Thornton,* 157 *Ga.* 487 (121 S. E. 820); *Hawkins* v. *Kimbrell,* 158 *Ga.* 760 (124 S. E. 351). These cases all seem to involve the question of an indebtedness by the husband prior to the loan, which is not involved in the present case, where no such indebtedness is shown to exist.

From what has been said, and from the authorities cited, we are of the opinion that no legal verdict other than that directed by the court could have been rendered. Under the pleadings and evidence the directed verdict was demanded.

*Judgment affirmed. All the Justices concur, except Russell, C. J., who dissents.*