WILLIAMSON, administrator, *v.* WALKER, executor, *et al.*

No. 11293.   November 12, 1936.

*Highsmith & Highsmith,* for plaintiff.

*S. Thomas Memory* and *J. B. Moore,* for defendants.

Russell, Chief Justice. In this case there was a trial by a jury, and at the conclusion of the evidence the court directed a verdict for the defendant. The plaintiff made a motion for new trial, and in one of the grounds properly assigned error on the direction of the verdict, for the reason that there were issues of fact which should have been submitted to a jury. The exception is to the denial of the motion for new trial. The controlling question in the case is whether the court, under the evidence adduced, was authorized to direct the verdict. Effie E. Williams died on February 16, 1928. The plaintiff is her administrator. In October, 1931, M. W. Walker advertised to sell described land on the first Tuesday in November, 1931, under a power of sale contained in a deed from Effie E. Williams to M. W. Walker, to secure an alleged loan of $1500. The action now before us was brought to enjoin this sale and to cancel the deed, on the ground that the

debt in question was that of the husband, E. O. Williams, and not the debt of his deceased wife. Walker filed an answer on November 3, 1931. Williams did not answer. Pending the cause Walker died, and his executors, James L. and Romie C. Walker were made parties defendant. The administrator, Williamson, by an amendment allowed December 12, 1931, alleged that E. O. Williams, the husband of Effie E. Williams, living in Appling County, approached M. W. Walker, living in Pierce County, for the purpose of borrowing some money; that Williams at the time was involved in debt, and desired said money for the purpose of paying his debts, and so informed Walker; that Walker had money that he wished to put out on interest on good security; that Williams did not have any land in his own name, and so informed Walker, but also informed him that his wife, Effie E. Williams, owned a very desirable and valuable farm in Appling County, and that he could get her to convey it as security for said debt; that Walker informed Williams that he would lend him the money, provided his wife would convey the property as security; that after personally inspecting the property, on account of its high quality and value as security, Walker was anxious to make the loan to obtain the interest on money he wanted to lend; that Walker and Williams colluded to have the wife of Williams convey to Walker her land as security for the loan made to her husband, and to have the wife assume the debt of her husband and convey to Walker her land as security therefor; that she did not want to borrow any money from Walker, and did not borrow any money from him, but as a result of the collusion entered into between Walker and her husband she executed the deed dated December 30, 1926, to secure the debt of her husband, and so assumed his debt to Walker, there being no other consideration for the deed, no part of the consideration of said deed to secure debt having been received by her. There was testimony substantially supporting all the allegations in this amendment.

Williams testified that he applied to Walker for a loan for himself; that Walker asked him what collateral he had, and he told Walker that he did not have anything, but that his wife had a good farm, and he thought he could get her to sign the paper for that; that Walker said, if the wife had the collateral and would sign it, he would let Williams have the money; that the witness told

Walker he wanted the money to pay debts; that Walker said he had the money and wanted to put it out on interest, and would go out and take a look at the property; that he did go out and look over the property, and, after having done so, said to the witness in the presence of the wife, "Well, Oliver, you have a fine place—if your wife will sign the paper securing me, I will let you have the $1500;" that the wife said, "I don't know so much about that, Mr. Walker—I don't know so much about that; I don't owe any debts now, and I will not borrow any money myself," and Walker said, "That is all right; this is fine land and it will make good stuff. Oliver will pay it back; you need not worry about that." This witness further testified that all the money obtained through the loan was used by him, and that no part of it was used by his wife or for her benefit.

It is true that there was no evidence of a pre-existing debt of the husband to the lender. There was evidence that a check for the $1500 was made out in the name of the wife, and that her indorsement was necessary to enable her to take physical temporary possession of the proceeds of the loan. It is true also that the lender was not at Baxley, and perhaps not even in Appling County, at the time the check was delivered to her by an attorney at law. But the fact that the transaction was finally closed, and the check —the symbol of the money loaned—was finally delivered by an intermediary, might of itself be a circumstance in support of the evidence for the plaintiff that the transaction was the result of a conspiracy and a collusion between the husband and the lender. The mere fact that the wife executes a conveyance of her property, and a check for the proceeds of a loan is issued to her, does not as a matter of law create a debt of the wife and not of the husband. Nor does it raise a conclusive presumption to that effect. The rule is well settled in this State that a wife may borrow money and give it to her husband to pay his debts; and that the purpose for which she intends to use her money may be immaterial, even though the lender knows the purpose for which she is borrowing the money, and is not himself a creditor of the husband. But if the lender is a party to a scheme between the husband and the wife, for which the borrowing of the money for such purpose is the outcome, the transaction is futile and invalid. In this case there was testimony that when the lender went to the home of the husband

and the wife, after looking over the property and finding it satisfactory, he brought to the knowledge of the wife, through his statement to her husband, that if she would convey her property to him as security he would lend the husband the money; that the wife then objected, and said she did not owe any debts and did not want to borrow any money, and the lender actively encouraged her to enter into the scheme which the husband had proposed, and the lender joined in the furtherance of the scheme. In what we have just said this court is not expressing any opinion, as to the truth of the matters stated, but we do hold that a jury would be authorized to find that there was a scheme of the character charged in the plaintiff's pleading, to induce the wife to put up her property for the purpose of borrowing money to pay the husband's debt and then claim immunity from any violation of the law. As said by Mr. Justice Gilbert in *Braswell* v. *Federal Land Bank of Columbia,* 165 *Ga.* 123 (3) (139 S. E. 861): "'A married woman may borrow money for the purpose of paying debts of her husband, and give her note and mortgage therefor; and such a contract will be binding upon her, although the lender may know, at the time the loan is made, that she is borrowing it for this purpose, if he is not the husband's creditor who is to be thus paid, and is no party to any arrangement or scheme between the husband and wife of which the borrowing of the money by her for such purpose is the outcome. *Chastain* v. *Peek,* 111 *Ga.* 889 (36 S. E. 967); *Rood* v. *Wright,* 124 *Ga.* 849 (53 S. E. 390); *Ginsberg* v. *Peoples Bank of Savannah,* 145 *Ga.* 815 (89 S. E. 1086).' *Garrett* v. *Thornton,* 157 *Ga.* 487 (3) (121 S. E. 820); *Temples* v. *Equitable Mortgage Co.,* 100 *Ga.* 503 (28 S. E. 232, 62 Am. St. R. 326); *Nelms* v. *Keller,* 103 *Ga.* 745 (30 S. E. 572); *Johnson* v. *Leffler Co.,* 122 *Ga.* 670 (50 S. E. 488); *Jackson* v. *Reeves,* 156 *Ga.* 802 (120 S. E. 541)."

In this case, evidence in behalf of the plaintiff indicates that the wife did not in any way participate in procuring or soliciting this loan to be made; that the husband alone approached the lender, not on behalf of his wife, but for himself; that the sole connection of the wife with the transaction was to sign a deed to her land to secure a debt, at the solicitation and encouragement of her husband and the lender. As to this it was said, in *Freeman* v. *Mutual Building & Loan Association,* 90 *Ga.* 190 (15 S. E. 758): "When

a lender of money to a married woman not only knows that she borrows it to pay a debt of her husband, but aids him in forming and executing a scheme by which the loan is to be made upon the security of her property, the delivery of the money to her being a mere matter of form, he being the real borrower, the debt for the loan is not her debt, and a mortgage given by her to the lender to secure the same is void." In *Gross* v. *Whitely,* 128 *Ga.* 79 (57 S. E. 94), it was held: "A deed executed by a married woman to a third person to secure a loan contemporaneously made to the husband is void, although the wife did not bind herself as surety to pay the husband's debt which the deed was given to secure." This court said: "The plea avers that the defendant is a married woman, and that her husband applied to Reynolds for a loan of one thousand dollars, and Reynolds consented to make the loan to her husband if she would secure the loan by a deed to her land. She consented to this arrangement, Reynolds lending her husband one thousand dollars upon the faith of her deed to him, to secure the debt. The loan was not made to the wife, but to the husband. Her part in the transaction was to secure the loan about to be made, not to her, but to her husband, by hypothecating her land. She was to receive no personal benefit from the loan, but her property was to become liable to pay it in the event of her husband's default. We think the deed, under these circumstances, is void." Also it was said: "If the wife can not bind her separate estate generally by entering into a contract of suretyship, surely she can not bind a specific portion of her separate property by hypothecating it to pay another's debt. The case of *Klink* v. *Boland,* 72 *Ga.* 485, holds that one can not take property belonging to the wife as security for a credit sale made to the husband. If the debt is the husband's the wife can not assume its payment, either by promising to pay the debt as a surety, or by pledging her property to pay it." The decision in *Saxon* v. *Bank of Rome,* 169 *Ga.* 784 (151 S. E. 501), is not in conflict with what we are now holding. The court was careful to point out that its ruling was based upon the particular pleading in that case and the reasons why it was possible to uphold the direction of a verdict. It was pointed out that at the time the note and deed were executed by the wife, no indebtedness existed from the husband to the bank "or any other person;" that the bank declined to extend the credit to

the husband, but did extend it directly to the wife; that the case was based upon the ground of suretyship only, and not upon any claim that it was a collusive transaction to subject the wife's property to the payment of the husband's debt; and that it did not appear that the lender of money to a married woman knew that she borrowed it to pay her husband's debt and aided him in a scheme for that purpose. In the instant case it would seem that there are several questions of fact that require submission to a jury: (a) whether the debt was the debt of the husband or the debt of the wife; (b) whether the loan in question was made to the husband or was made to the wife; (c) whether the lender knew that the money was borrowed to pay debts of the husband; and (d) whether, knowing this, the lender connived with the husband to persuade and induce the wife to hypothecate her property to borrow money for such purpose. We are of the opinion that the court erred in directing the verdict for the defendants, and thereafter in overruling the motion for new trial. *Hawkins* v. *Kimbrell,* 158 *Ga.* 760 (124 S. E. 351) ; *Blackburn* v. *Lee,* 137 *Ga.* 265 (73 S. E. 1) ; *Ross* v. *Durrence,* 173 *Ga.* 457 (160 S. E. 370).

*Judgment reversed. All the Justices concur.*