MONK *v.* HOLDEN, executor.

**550**

*J. A. Mitchell,* for plaintiff.

*Frank A. Holden, Hawes Cloud,* and *H. C. Schroeder,* for defendant.

BELL, Justice. In December, 1931, Mrs. Annie C. Monk instituted against John F. Holden an action to recover land, and for cancellation. On May 23, 1932, the defendant filed a general and special demurrer. At the August term, 1937, the defendant having died, his executor, Frank A. Holden, was made a party defendant in his stead. During the same term the plaintiff offered an amendment to her petition, which was allowed subject to demurrer. The executor then renewed the demurrer filed by the original defendant, and demurred generally and specially to the amendment and to the petition as amended. The court sustained several of the grounds of demurrer to the amendment, striking the amendment in its entirety. The court also sustained the original general demurrer and dismissed the action. To these rulings the plaintiff excepted.

Whether or not the amendment was subject to the particular grounds of demurrer urged by the executor, it is our opinion that the petition as amended was insufficient to state a cause of action, and that the judgment of dismissal should be affirmed. The petition contained substantially the following allegations:

John F. Holden is in possession of four described tracts of land situated in the County of Taliaferro, containing in the aggregate about 520 acres. The "petitioner is the owner and claims title to the said land, and avers that said Holden has no claim, rightfully, on said land. . . The said land is and has been for many years the property of petitioner, without any rightful claim whatsoever of the said Holden upon said land, though said Holden has in his possession certain papers and claims of title, which are invalid, as will hereinafter be shown. Hereto attached is a statement of the transactions upon which said Holden claims title to said land. The first transaction is a mortgage from petitioner to said Holden for the sum of $1200, and was given for indebtedness which said

Holden held against the husband of petitioner. The second transaction is for the sum of $1500, which was made to cover a loan made to the husband of petitioner, wholly for the uses and purposes of the said husband. Said husband was at said time being threatened with a criminal prosecution, and his arrest and imprisonment was imminent. To provide said sum that said husband might not be arrested and imprisoned, and upon the advice of said Holden, petitioner executed a security deed. The third transaction was for the sum of $2500, and made for the purpose of obtaining money to liquidate, together with the sum represented by the second transaction, the claims of certain creditors of the said husband, and which sum covered attorney's fees, advance interest to the Bank of Taliaferro, which sum was secured by additional property of petitioner. The fourth transaction was for the renewal of the transaction of the loan upon the said described property. The fifth transaction was for the purpose of further securing and renewing the indebtedness of the said husband. The sixth transaction was for the purpose of merging all the indebtedness as set forth above, and securing the said Holden for the sum of $5600, as said Holden represented to petitioner that he had taken over the claims and indebtedness represented by the foregoing transactions. Petitioner avers that said Holden was in reality the sole controlling person in the management of the said banks, and operated the same for his individual gain, and that said Holden was a large stockholder, and had knowledge that none of the transactions were for the use and benefit of the said petitioner, and that said Holden discovered that the property which was given as security for the loan in the first transaction was not of value equal to the amount of the loan, and negotiated and effected the subsequent loans and transactions for the purpose of obtaining the other property of petitioner as additional security by increasing the loans and calling for more security, and that said Holden as the president of the said banks, with knowledge of these facts, was notice to the banks of petitioner's rights.

"All of said papers or claims, omitting the first transaction, were executed by petitioner under duress, for the reason that A. M. Robinson Co., of Atlanta, Georgia, were threatening to prosecute said husband, asserting that said husband had delivered to it, A. M. Robinson Co., a statement for credit which was fraudulent,

and that unless the amount of the claim was paid at that time a warrant would be obtained and said husband be arrested and returned to Atlanta for trial, and petitioner by such threats and intimidations was coerced and frightened into executing the papers that are merged into the sixth transaction, and petitioner's husband was suffering from a fatal malady, and, through fear that an arrest and imprisonment of the said husband would endanger the life and health of the said husband, petitioner executed the papers in the transactions which were merged into the sixth transaction; and said Holden had knowledge of these facts, and as president of the said banks imparted such knowledge to said banks, and by said transactions obtained benefits in payments of interest and property."

The petition contained prayers for cancellation of "all of said papers," for recovery of the land described, and for general relief. Attached to the petition was the following abstract of the several transactions enumerated therein: First: Mrs. Annie C. Monk to Bank of Crawfordville; mortgage, dated Feb. 25, 1921, recorded Jan. 20, 1922. Second: Mrs. Annie C. Monk to Bank of Taliaferro; deed, dated May 25, 1922, recorded May 26, 1922. Third: Mrs. Annie C. Monk to Bank of Crawfordville; deed, dated May 25, 1922, recorded May 29, 1922. Fourth: Mrs. Annie C. Monk to Bank of Taliaferro; mortgage dated Dec. 4, 1924, recorded Dec. 15, 1924. Fifth: Mrs. Annie C. Monk to Bank of Taliaferro; mortgage, dated Dec. 4, 1924, recorded Dec. 24, 1924. Sixth: Mrs. Annie C. Monk to John F. Holden; deed, dated Dec. 14, 1925, recorded Dec. 24, 1925.

It will be noticed that there were only three original transactions, the fourth and fifth being renewals, and the sixth being a deed "for the purpose of merging all of the indebtedness as set forth above and securing the said Holden for the sum of $5600," Holden having represented to the plaintiff that he had become the owner of all of the "claims and indebtedness represented by the foregoing transactions."

The amendment to the petition was as follows: "Petitioner avers that defendant has no fee-simple title to said land; that the sixth transaction referred to in the petition is the only claim of title that defendant has to said land as a basis, and that the same is a security deed. . . [It] was delivered to said Holden with

the understanding and agreement that the rents and uses of the said land be used in the payment of the indebtedness covered by said security deed, with such other payments as might be made on said indebtedness. That ――――― dollars have been paid on the same, and the rents and uses of the said property from the 13th day of January, 1929, until ――――― day of August, 1937, are of the value of $5400; and the petitioner in the carrying out of said agreement is not asking of defendant any mesne profits for such time as defendant has been in possession. The yearly value of the said property for said period was $600. The question of the statutory affidavit is waived by defendant."

■ It appears from the petition and the exhibit that in 1921 the husband of the plaintiff was indebted to John F. Holden in the sum of $1200, for which the husband had executed to him a mortgage of some kind. For the purpose of paying this debt of the husband, the plaintiff borrowed from the Bank of Crawfordville a sum of money, securing the indebtedness to the bank by a mortgage on one of the tracts of land described in the petition. In 1922 the husband was indebted to A. M. Robinson Company. This company was about to prosecute him upon a charge of making a fraudulent statement for the purpose of obtaining credit. In these circumstances the plaintiff borrowed from the Bank of Taliaferro the sum of $1500 to be applied on the debt to A. M. Robinson Company, securing the loan thus obtained from the Bank of Taliaferro by a deed conveying other real estate owned by her. To liquidate this loan and to pay other debts of her husband, including attorney's fees and "advance interest, to the Bank of Taliaferro," the plaintiff borrowed again from the Bank of Crawfordville, the loan in this instance amounting to $2500, and being secured by a deed to additional real estate. It was by these three transactions that the plaintiff's property became originally involved as security for debts of her husband. According to the petition, the fourth transaction was a renewal, and the fifth was also a renewal with additional security. The sixth transaction consisted of a deed to John F. Holden, executed "for the purpose of merging all the indebtedness," of which John F. Holden had then become the owner and which at that time amounted to $5600.

"A married woman may borrow money for the purpose of paying debts of her husband, and give her note and mortgage there-

for; and such a contract will be binding upon her, although the lender may know, at the time the loan is made, that she is borrowing it for this purpose, if he is not the husband's creditor who is to be thus paid, and is no party to any arrangement or scheme between the husband and wife of which the borrowing of the money by her for such purpose is the outcome." *Braswell* v. *Federal Land Bank of Columbia*, 165 *Ga.* 123 (3) (139 S. E. 861); *Saxon* v. *National City Bank of Rome*, 169 *Ga.* 784 (2) (151 S. E. 501); *Roan* v. *Union Central Life Ins. Co.*, 181 *Ga.* 335 (182 S. E. 21); *Williamson* v. *Walker*, 183 *Ga.* 320 (188 S. E. 346); *Purdue* v. *Barber*, 184 *Ga.* 512 (192 S. E. 16); *Magid* v. *Beaver*, 185 *Ga.* 669 (196 S. E. 422). Even though it may appear that the banks through John F. Holden had knowledge of the purpose for which the several loans were obtained, neither bank as lender was the husband's creditor who was thus to be paid, and so far as disclosed by the petition neither bank was party to any arrangement or scheme between the husband and the wife, of which the borrowing of the money by her for such purpose was the outcome. While the petition alleged in effect that Holden was the managing officer of these two banks, and that on discovering that the security for the first loan was inadequate he "negotiated and effected the subsequent loans. . . for the purpose of obtaining the other property of petitioner as additional security by increasing the loans and calling for more security," these averments did not show that either of the banks through Holden, or that Holden himself, was party to any arrangement or scheme between the husband and the wife having for its purpose the borrowing of money by her for the payment of his debts. Loans extended by banking institutions are usually based upon some gain or advantage to the lender, and a purpose by the lender merely to obtain additional security is not different in character from a purpose to earn interest. Compare *Rood* v. *Wright*, 124 *Ga.* 849 (53 S. E. 390); *Third National Bank of Columbus* v. *Poe*, 5 *Ga. App.* 113 (62 S. E. 826). When the petition is construed most strongly against the plaintiff, as must be done on general demurrer, it fails to show that any one of the loans procured by the plaintiff from the banks was invalid because obtained by her for the purpose of paying a debt or debts of her husband. If the mortgages and deeds executed by the wife were valid in the hands of the banks respectively, they as holders could

transfer the indebtedness and security to John F. Holden as an individual, and in such case he would succeed to their rights as against the plaintiff.

■ The petition further alleged, however, that the "papers" for the second and third loans were executed by the plaintiff because of fear that her husband would be arrested and imprisoned at the instance of the A. M. Robinson Company, one of the creditors of her husband, to be paid from these loans; and also that Holden as an official of both banks had knowledge of these facts. Whether or not these averments were sufficient to show that these loans were invalid at the time made (*Mallory* v. *Royston Bank,* 135 *Ga.* 702, 70 S. E. 586; *Lichtenstein* v. *Wilensky,* 151 *Ga.* 353, 107 S. E. 49; *Keller* v. *Levison,* 165 *Ga.* 178, 140 S. E. 493; *Hawkes* v. *Mobley,* 174 *Ga.* 481, 488, 163 S. E. 494; *O'Callaghan* v. *Bank of Eastman,* 180 *Ga.* 812, 819, 180 S. E. 847), yet, "Where the execution of a contract is procured by duress, the person executing it may, after removal of the duress, waive the duress and ratify the contract." *Augusta Motor Sales Co.* v. *King,* 36 *Ga. App.* 541 (137 S. E. 102). Compare *Strickland* v. *Parlin & Orendorf Co.,* 118 *Ga.* 213 (3) (44 S. E. 997); *Carl S. Strickland Co.* v. *Union Banking Co.,* 42 *Ga. App.* 645 (6) (157 S. E. 115). These two loans were twice renewed by the plaintiff before they came into the hands of John F. Holden as owner, and still later the plaintiff executed to him a deed based upon such consideration. Accordingly, if the original loans should be considered as having been affected in any manner by duress, it appears from the petition that the plaintiff was under no restraint at the time of recognizing and affirming them in the later transactions. Therefore the plaintiff has waived any possible ground of complaint on account of duress.

■ Even if the petition as amended may be construed as showing that the deed to Holden was a security deed (see Code, § 67-104), it appears that at the time this deed was executed in 1925 the debt amounted to $5600. To this sum interest should be added at the legal rate. At the time the plaintiff amended her petition in August, 1937, this debt with interest would have amounted to approximately $10,000. In the amendment the plaintiff claimed an accountability for only $5400 for rents and profits. If the plaintiff executed the deed to Holden and at the same time

surrendered possession to him under an agreement that he should have the land only until the rents and profits were sufficient to retire the debt, she is not yet entitled to recover the land under this agreement, for the reason that it appears that neither at the time the suit was filed nor at the time the amendment was allowed in August, 1937, had the rents and profits amounted to a sufficient sum to extinguish the debt; and this would be true even if the alleged sum of $600 as the yearly value were applied as a credit for each and every year from the date of such deed. See *Polhill v. Brown,* 84 *Ga.* 338 (10) (10 S. E. 921); *Gunter* v. *Smith,* 113 *Ga.* 18 (38 S. E. 374); *Marshall* v. *Pierce,* 136 *Ga.* 543 (71 S. E. 893). The petition as amended was insufficient to state a cause of action, and the court properly sustained the general demurrer as renewed on allowance of the amendment. In this view, it is unnecessary to determine whether the amendment alone was sub- ject to the demurrers which were sustained by the court.

*Judgment affirmed. All the Justices concur.*

RUSSELL, C. J., concurs in the result, but not in all that is said in the opinion.